Arthur Lee BANKS, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–90–00285–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 27, 1991.

Fred G. Rodriguez, Former Criminal Dist. Atty., Steven C. Hilbig, Criminal Dist. Atty., Barbara Hervey, Angela Moore, Asst. Criminal Dist. Attys., San Antonio, for appellee.

Before BIERY, GARCIA and ONION,[1] JJ.

## OPINION

ONION, Justice.

Appellant appeals his conviction for injury to a child. *See* TEX.PENAL CODE ANN. § 22.04(a)(4) (Vernon 1989).[2] After the jury found the appellant guilty, the trial court, finding that the appellant had been previously convicted of a felony as alleged, assessed punishment at twenty (20) years' imprisonment.

Appellant advances five points of error. Arguing that injury to a child is a "specific result" offense, the appellant initially contends that the trial court erred in giving the jury a charge that failed to apply the culpable mental states to causing the prohibited results rather than merely engaging in the conduct. In connection with the same general subject matter, the appellant complains, in the next two points of error, that the error occurred when the prosecutor misstated the law during jury arguments, and that he was denied the effective assistance of trial counsel. In the fourth point of error, appellant urges that the trial court erred in denying his requested charge on the lesser included offense of recklessly causing injury to a child. In his fifth point of error, appellant argues that the trial court erred in allowing the prosecutor to introduce evidence of the effects of the alleged offense on the victim.

Fourteen-year-old Joseph Williams testified that on July 11, 1989, he lived with his mother, his sister, and the appellant, his

Julie Pollock, Hitchings, Pollock & Bernard, San Antonio, for appellant.

1. Presiding Judge, Retired, Court of Criminal Appeals, sitting by assignment pursuant to TEX. GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. Act of May 24, 1973, 63rd Leg., R.S., ch. 399, 1973 Tex.Gen.Laws 883, 920, *amended by* Act of May 25, 1981, 67th Leg., R.S., ch. 604, § 1, 1981 Tex.Gen.Laws 2397, *amended by* Act of May 29, 1989, 71st Leg., R.S., ch. 357, § 1 1989 Tex.Gen. Laws 1441 (current version at TEX.PENAL CODE ANN. § 22.04(a)(4) (Vernon Supp.1991)).

mother's live-in boyfriend. Williams testified that on the morning in question, he and his six-year-old sister, Lakisha, had some difficulty. She left home and went to an aunt's house nearby. Appellant called Williams from the aunt's house and told him not to argue with Lakisha, and that he "was dead" when appellant got home. Williams related that he was hanging laundry in the yard when appellant hit him in the back of the head and knocked him to the ground; that appellant dragged him into the house while kicking him in the ribs and punching him in the face. Williams stated that appellant "busted" his head open with a wooden ashtray. Williams described how appellant licked blood from Williams' head and told Williams that he (appellant) was the devil. After appellant left the house, Williams called the aunt. He was taken to the hospital where he received fifteen stitches.

Appellant testified that he was at the aunt's house when Lakisha arrived, crying. She told of being physically abused by her older brother. Appellant admitted he called Williams on the phone but denied the language Williams had stated was used. Appellant testified that he found Williams in the living room, and that he admonished Williams about his conduct with his six-year-old sister. Appellant related that Williams got belligerent and told appellant that he did not have to listen to the appellant as the appellant was not his father. Appellant testified that Williams came at him with a clenched fist and attempted to strike him, and that he grabbed Williams to defend himself and to restrain Williams. He eventually hit Williams with his fist, "a natural reaction to block." Appellant repeatedly stated that he never intended to injure Williams but only intended to discipline him, "to tell him about his attitude."

Section 22.04(a)(4) of the Texas Penal Code, as amended in 1981, and under which appellant was prosecuted provides:

> (a) A person commits an offense if he intentionally commits an offense with criminal negligence, by act or intentionally, knowingly or recklessly by omission, engages in conduct that causes to a child, elderly individual, or invalid individual:
>
> (4) bodily injury.

Act of May 25, 1981, 67th Leg., R.S., ch. 604, § 1, 1981 TEX.GEN.LAWS 2397 (amended 1989) (current version at TEX.PENAL CODE ANN. § 22.04(a)(4) (Vernon Supp.1991)).

The indictment in pertinent part alleged that appellant on or about July 11, 1989:

> did then and there knowingly and intentionally engage in conduct that caused bodily injury to Joseph Williams, a child who was fourteen (14) years of age or younger, by hitting the said Joseph Williams about the face and body with his hands; ...

■ Injury to a child is a result-oriented crime. *Haggins v. State*, 785 S.W.2d 827, 828 (Tex.Crim.App.1990); *Alvarado v. State*, 704 S.W.2d 36, 39 (Tex.Crim.App. 1985); *Beggs v. State*, 597 S.W.2d 375, 377 (Tex.Crim.App. [Panel Op.] 1980); *Samples v. State*, 762 S.W.2d 751, 752 (Tex.App.— Fort Worth 1988, no pet.). Both *Alvarado* and *Beggs* hold that the statutory phrase "engage in conduct" is *vestigial* language, and that the focus of culpability is on the result of the conduct. *Kelly v. State*, 748 S.W.2d 236, 239 (Tex.Crim.App.1988)[3]. "Both opinions emphasize that the mental state criminalized in the injury to a child statute is that state of mind which contemplates the prohibited *result....*" *Haggins*, 785 S.W.2d at 828. Thus, injury to a child is a "specific result" offense requiring a culpable mental state which relates not to the nature of the circumstances surrounding the charged conduct but to the result of the conduct. *See Spang v. State*, 781 S.W.2d 713, 715 (Tex.App.—Austin 1989, no pet.); *Phillips v. State*, 753 S.W.2d 813, 814 (Tex.App.—Austin 1988, pet. ref'd).

■ Appellant contends that the trial court in the instant case erred in failing to

---

**3.** "Notwithstanding the [statutory] phrase 'engages in conduct that,' injury to a child is a 'specific result' offense; that is, the culpable mental state relates not to the nature of or circumstances surrounding the charged conduct, but to the result of the conduct." *Westfall v. State*, 782 S.W.2d 951, 953 (Tex.App.—Austin 1990, pet. ref'd).

give sua sponte a jury charge that applied the culpable mental states of "intentionally and knowingly" to causing the prohibited result rather than merely engaging in the conduct. The State agrees that if the appellant had requested a charge limiting the culpable mental states to the prohibited result, or had timely objected to the charge given, he would have been entitled to the charge. Since appellant did not object to the charge, he must claim fundamental error and show egregious harm; that is, that he was denied a fair and impartial trial as a result of the error. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). In determining whether egregious harm occurred, the error should be viewed in light of the entire jury charge, the state of the evidence (including contested issues and the weight of probative evidence), the argument of counsel, and any other relevant information revealed by the record. *Id.; Sandow v. State,* 787 S.W.2d 588, 597 (Tex. App.—Austin 1990, pet. ref'd).

The jury was instructed in Paragraph I and III of the court's charge as follows:

### I.

Our law provides that a person commits an offense if he intentionally, or knowingly by act or omission, engages in conduct that causes bodily injury to a child who is fourteen (14) years of age or younger.

### III.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person ₒ acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

In the application paragraph of the court's charge, the jury was instructed:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of July, A.D., 1989 in Bexar County, Texas, the defendant Arthur Lee Banks, did intentionally or knowingly engage in conduct that caused bodily injury to Joseph Williams, a child who was fourteen (14) years of age or younger, by hitting the said Joseph Williams about the face and body with his hands, then you will find the defendant guilty of intentionally or knowingly causing bodily injury to a child fourteen (14) years of age or younger.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty of engaging in conduct that caused bodily injury to Joseph Williams.

Elsewhere in the jury instructions, the trial court told the jury that "you are bound to receive the law from the Court, which is herein given to you, and be governed thereby."

Two verdict forms were submitted with the charge. One was a "not guilty" form. The other form which was utilized by the jury read: "We, the Jury, find the defendant, Arthur Lee Banks, guilty of intentionally or knowingly engaging in conduct that caused bodily injury to Joseph Williams." No objection was made to the forms of verdict submitted.

During the State's closing argument, the prosecutor told the jury without objection:

The other thing is reading the charge. It is very important to read the charge, that is correct; especially when you look at the intent element.

The intent element goes to conduct, not to the intent to cause bodily injury. The. injury is the result of a conduct.

■ Reviewing the jury charge as a whole, we observe that in the abstract or definitional portion of the charge, the trial court gave the full statutory definitions of intent and knowledge. *See* TEX.PENAL CODE ANN. § 6.03(a) and (b) (Vernon

1974). There was no attempt to limit the culpable mental states to the result of the offense of injury to a child.

■ In the application paragraph, the court also failed to limit the culpable mental states. In fact, the application paragraph authorized a conviction based solely on the finding that the appellant intentionally or knowingly engaged in conduct which happened to cause bodily injury to a child. A result-oriented offense cannot be based solely upon such a finding. *Sneed v. State*, 803 S.W.2d 833, 835 (Tex.App.—Dallas 1991, pets. ref'd); *see also Lugo–Lugo v. State*, 650 S.W.2d 72, 81–82 (Tex.Crim. App.1983). As noted in *Sneed*, the language in a jury charge involving a result-oriented offense "that defines a culpable mental state with respect to conduct adds nothing since the culpable mental state does not apply to the conduct, and it allows the jury to do that which the law does not—find the accused guilty ... based only on his conduct, rather than on intending or knowing the prohibited result." *Sneed*, 803 S.W.2d at 836.

The charge further told the jury it was to be governed by the law given them. The "guilty" form of jury verdict submitted, which could have misled the jury, required only a finding that the appellant intentionally or knowingly engaged in conduct.

To compound the error, the prosecutor told the jury in jury argument that the "intent element goes to conduct, not to the intent to cause bodily injury." Thus the prosecutor indicated that the State need not prove that the appellant intended the result obtained.

Considered collectively, the errors compel us to a finding of egregious harm in accordance with the *Almanza* standard of review. *Sneed*, 803 S.W.2d at 837. Appellant was denied a fair and impartial trial.

The State does urge that the error or errors are harmless. The State relies upon *Hernandez v. State*, 819 S.W.2d 806 (Tex. Crim.App.1991), a capital murder case. The reliance is misplaced. In *Hernandez*, the court pointed out that capital murder, unlike the injury to a child offense in *Alvarado*, was not merely a "result of conduct" offense, that both a finding of a culpable mental state to engage in the conduct and a culpable mental state to cause the result were required by the wording of the indictment and the charge. Therefore, the trial court in *Hernandez* did not err in giving the full statutory definitions of "intentionally" and "knowingly" in the abstract portion of the court's charge, despite the timely objection. *Hernandez*, 819 S.W.2d at 811–12.

In *Kinnamon v. State*, 791 S.W.2d 84, 87–89 (Tex.Crim.App.1990), a capital murder case, the trial court charged over objection on the full statutory definition of "intentional" in the abstract portion of the jury instructions. Acknowledging that capital murder (under TEX.PENAL CODE ANN. § 19.03(a)(2) (Vernon 1989)) was a "result of conduct" offense, the court observed that the crime required not only that the accused be found to have intended to engage in the act that caused the death, he also must have specifically intended that death result from that conduct. The court then held that the application paragraph limited the definitional portion of the charge when it restricted the definition of "intentional" to its factual context: that the defendant "intentionally caused the death of Ronald Charles Longmire by shooting Ronald Charles Longmire with a gun." The court reasoned that Kinnamon was convicted not because he engaged in the conduct of pulling the trigger of a gun, but because the jury found his objective was to cause the death of the deceased in the course of the robbery. *Id.* at 89. To the same effect is *Buffington v. State*, 801 S.W.2d 151 (Tex.App.—San Antonio 1990, pet. ref'd). *Kinnamon* and *Buffington* are distinguishable, inter alia, on the fact that in the instant case there was no limitation in the application paragraph upon the abstract or definitional portion of the charge.

The instant case is like the murder cases in *Wallace v. State*, 763 S.W.2d 628 (Tex. App.—San Antonio 1989, no pet.) and *Mena v. State*, 749 S.W.2d 639 (Tex.App.—San Antonio 1988, pet. ref'd), in that the accused made no objection to the charge ab-

stractly defining "intentionally" and "knowingly." They are unlike, however, because in the instant case, the appellant presented a defense which would directly effect an assessment of his conduct, and the prosecutor compounded the error by relying on the erroneous definition in his final argument as in *Alvarado,* 704 S.W.2d at 37. For the same reasons, *Sandow v. State,* 787 S.W.2d 588 (Tex.App.—Austin 1990, pet. ref'd), is distinguishable from the instant case. Appellant's first point of error is sustained.

Reversal in this cause need not rest alone upon a fundamental jury charge error. In his third point of error, appellant contends that he was denied the effective assistance of counsel in violation of the federal and state constitutions. *See* U.S. CONST. amend. VI and XIV; TEX. CONST. art. I, § 10.

■ A defendant in a Texas criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987). In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) show that the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. at 2065. "Prejudice," however, is demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine the confidence in the outcome. *Id.; Ex parte Guzmon,* 730 S.W.2d 724, 733 (Tex.Crim.App.1987).

■ The *Strickland* standard has been adopted in Texas for resolving allegations of ineffective assistance of counsel under both the federal and state constitutions. *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986); *see also Washington v. State,* 771 S.W.2d 537, 545 (Tex. Crim.App.), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989); *Holland v. State,* 761 S.W.2d 307, 314 (Tex. Crim.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). Whether the *Strickland* standard has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of the trial counsel, and the test is applied at the time of the trial, not through hindsight. *Wilkerson,* 726 S.W.2d at 548; *see also Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim. App.1990). The burden of proving ineffective assistance of counsel by a preponderance of the evidence rests upon the convicted defendant. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). Allegations of ineffective assistance will be sustained only if they are firmly founded. *Smith v. State,* 676 S.W.2d 379, 385 (Tex.Crim.App. 1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). The fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness. *Walston v. State,* 697 S.W.2d 517, 519 (Tex. App.—San Antonio 1985, pet. ref'd). The particular facts and circumstances of each case must be considered in any claim of ineffective assistance. *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). The *Strickland* standard has never been interpreted to mean that the accused is entitled to errorless or perfect counsel. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986).

Appellant divides his claim of ineffective assistance into two parts. He contends that trial counsel failed to object to the court's erroneous charge on the law of injury to a child and to the "guilty" jury

**682**

verdict form. Appellant further notes the failure of counsel to object to the prosecutor's misstatement of the law in jury argument which had the effect of reducing the State's burden of proof. Appellant argues there could have been no sound trial strategy as a basis for trial counsel's omissions.

■■■ It is fundamental that an attorney must have a firm command of the facts of the case as well as the governing law before he can render reasonably effective assistance. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Ex parte Lilly,* 656 S.W.2d 490, 493 (Tex.Crim.App. 1983). "It may not be argued that a given course of conduct was within the realm of trial strategy unless and until the trial attorney has conducted the necessary *legal* and factual investigation which would enable him to make an informed rational decision." *Welborn,* 785 S.W.2d at 393 (emphasis added). Counsel has a duty to bring to bear such skill and knowledge as will render the trial a "reliable adversarial testing process." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2065.

■■■ At the time of appellant's May 1990 trial, it was settled law that injury to a child was a result-oriented offense, and that an accused was entitled, upon timely objection or request, to have the definitions of culpable mental states limited in the court's charge to that which related to the "result" of the offense.[4] Any legal investigation or research would have revealed the applicable law. Given the circumstances of the present case, it cannot be argued that counsel's course of conduct was within the realm of trial strategy. The failure to ob-

ject to the court's charge, to the submitted verdict form, and to the prosecutor's jury argument was without any plausible basis. Clearly appellant has sustained his burden in meeting the first prong of the *Strickland* test. Counsel's deficiencies were such that he was not functioning effectively as counsel. The next question becomes whether the trial deficiencies prejudiced appellant's defense. Appellant's primary defense was that he did not intend to injure. He repeatedly testified to this fact. The court's charge and the prosecutor in argument instructed the jury that to find appellant guilty of the offense, all it had to find was that he intended to engage in the conduct. In effect, the jury was told that it did not matter if the appellant had no intent to injure. It is reasonable to conclude that the jury followed the instruction given. Appellant's defense could have been believed by the jury, but it was required to follow the law as given in the charge and to convict upon a finding of engaging in the conduct. Appellant has satisfied the second prong of *Strickland.* Appellant's third point of error is sustained.

In view of our disposition of points of error one and three, we need not reach appellant's other contentions. The judgment of conviction is reversed and the cause is remanded.

---

4. *Beggs, supra,* was decided in 1980, ten years prior to the instant trial. *Alvarado* was decided in 1985.