# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00420-CR

**Margaret Brockington aka Margaret Huffman, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF RUNNELS COUNTY, 119TH JUDICIAL DISTRICT
NO. 4924, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Margaret Brockington appeals her conviction of reckless injury to a child by omission. *See* Tex. Pen. Code Ann. ' 22.04 (West 2003). The trial court assessed appellant=s punishment, enhanced by two prior felony convictions, at imprisonment for twenty-five years. Appellant asserts that the evidence is legally and factually insufficient to support the jury=s verdict. We will affirm the judgment.

Appellant was charged with intentionally, knowingly, and recklessly causing serious bodily injury to the child Dalvin Huffman by omission in that appellant failed to provide proper care for Dalvin Huffman resulting in his death from smoke inhalation when appellant left him alone in her residence at night and the residence burned. The jury found appellant Aguilty of recklessly, by omission, causing injury to a child as charged in the indictment.@

In her first point of error, appellant insists that Athe evidence was not legally sufficient to show that the appellant acted >recklessly= as to the result-oriented offense of injury to a child.@[1]  A person commits the offense of reckless injury to a child if the person recklessly, by omission, causes a child serious bodily injury.  *See* Tex. Pen. Code Ann. ' 22.04(a)(1).  AChild@ means a person fourteen years of age or younger.  *Id.* (c)(1).  AOmission@ means failure to act.  *Id.* ' 1.07(34).  ASerious bodily injury@ means bodily injury that creates a substantial risk of death or that causes death.  *See id.* (46).

---

[1]  In her second point of error, appellant urges that the Aevidence failed to establish a causal connection between appellant=s omission and the injury to the child.@  Appellant=s second point of error was not raised in the trial court by an objection to the jury charge or by a specially requested jury charge.  On appeal, appellant does not contend that the omission of such a charge was error.  Therefore, in view of the record, and the manner in which the point of error is presented and argued on appeal, we will consider this point of error as a part of appellant=s challenge to the legal sufficiency of the evidence.

A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *See id.* ' 6.03(c) (West 2003). The risk must be of such nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor=s standpoint. *Id.* Reckless conduct involves conscious risk creation, that is, the actor was aware of the risk surrounding his conduct or the result of his conduct, but consciously disregarded that risk. *See Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975); *Montoya v. State*, 744 S.W.2d 15, 29 (Tex. Crim. App. 1987); *Thomas v. State*, 699 S.W.2d 845, 849 (Tex. Crim. App. 1985); *Arellano v. State*, 54 S.W.3d 391, 393 (Tex. App.CWaco 2001, pet. ref=d); *Juneau v. State*, 49 S.W.3d 387, 392 (Tex. App.CFort Worth 2000, pet. ref=d); *Cardona v. State*, 973 S.W.2d 412, 416 (Tex. App.CAustin 1998, no pet.); *Henderson v. State*, 825 S.W.2d 746, 751 (Tex. App.CHouston [14th Dist.] 1992, pet. ref=d).

Injury to a child is a Aspecific result@ offense requiring a culpable mental state which relates not to the nature of the circumstances of the charged conduct but to the result of the conduct. *See Alvarado v. State*, 704 S.W.2d 36, 38 (Tex. Crim. App. 1985); *Banks v. State*, 819 S.W.2d 676, 678 (Tex. App.CSan Antonio 1991, no pet.).

A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. *See* Tex. Pen. Code Ann. 6.04(a) (West 2003).

In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

**3**

could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.CAustin 2000, pet. ref=d). The standard of review is the same whether the evidence is direct, circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994).

The conflicting evidence when viewed in the light most favorable to the prosecution shows that appellant had assumed the care and custody of her five-year-old grandson, Dalvin Huffman. On the night of March 27, 1999, appellant left Dalvin alone in her house. That night, the house burned and Dalvin died as a result of smoke inhalation. Expert testimony was offered that the fire that burned the house had been deliberately ignited. However, no evidence was offered to prove the arsonist=s identity.

Appellant argues that in order for her Aconviction to stand, there would have to be a substantial and unjustified risk that some unknown person would set Appellant=s house on fire.@ Appellant also asserts that the evidence shows she could not have saved the child even if she had been in the house. Therefore, she says there is no connection between her conduct in leaving the child alone in her residence and the resulting death of the child. For the most part, appellant relies on the testimony of the State Fire Marshal=s investigator that an accelerant caused the fire to burn and spread rapidly. In the opinion of the fire investigator, the heat and smoke were so great that no one in the house could have survived the fire.[2]

---

[2] Appellant relies on two cases: *Whitmire v. State*, 913 S.W.2d 738 (Tex. App.CEastland 1996), *appeal permanently abated*, 943 S.W.2d 894, 895 (Tex. Crim. App. 1997); *Banks v. State*, 819 S.W.2d 676, 678 (Tex. App.CSan Antonio 1992, no pet.). These cases are distinguishable from this case. The defendants in those cases were found guilty of intentionally and knowingly committing *acts*

**4**

resulting in injury to a child.  In this case, appellant was found guilty of recklessly causing injury to a child by *omission*.  A more analogous case is *Rankin v. State*, 41 S.W.3d 335 (Tex. App.CFort Worth 2001, pet. ref=d) (defendant guilty of knowingly leaving open septic tank in which child drowned).

To convict appellant, the jury was obliged to find beyond a reasonable doubt, applying the objective ordinary person standard, that appellant failed to provide proper care for the child by leaving him alone at night in her residence, consciously creating a substantial and unjustifiable risk that resulted in the child=s serious bodily injury. The jury need not have believed that appellant had to foresee the exact and actual cause of the child=s injury. The risk created by appellant could have resulted in the child=s injury by any number of concurring causes. The child could have been kidnapped or sexually assaulted, or the child himself could have started the fire resulting in his death.

We conclude that a rational jury could find, beyond a reasonable doubt, that: (1) appellant had assumed the care and custody of her five-year-old grandson, Dalvin Huffman, (2) appellant recklessly failed to provide the proper care for her grandson by leaving him alone at night in her residence, (3) appellant=s reckless conduct created a substantial and unjustifiable risk, (4) the burning of the house by some unknown person was a concurring cause of the child=s injury and death, and (5) but for appellant=s omission creating the unjustified risk the child=s injury and death would not have occurred. The evidence is legally sufficient to support the jury=s verdict that appellant, by her reckless omission to properly care for the child, caused serious bodily injury and the death of the child. Appellant=s first and second points of error are overruled.

In her third point of error, appellant insists that the evidence is factually insufficient to support the jury=s verdict that she recklessly, by omission, caused injury to a child. In determining factual sufficiency of the evidence, the reviewing court must consider and take a neutral view of all of the evidence, reversing the judgment if: (1) the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder=s determination, or (2) the proof of

guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). When a jury=s verdict depends primarily on its evaluation of the witnesses= demeanor and credibility, it deserves almost total deference. *Johnson*, 23 S.W.3d at 8-9; *Cain*, 953 S.W.2d at 408-09.

Two written pretrial statements made by appellant were admitted in evidence. Appellant testified in her own defense. Her trial testimony and her written statements were substantially the same. According to appellant, who lived in Winters, she worked on March 26, 1999. After work, she picked up her grandson, Dalvin Huffman, at his baby-sitter=s. At a fast food restaurant, appellant obtained some food for Dalvin, and they returned to appellant=s house. Jerry Alvarado, who at that time was living at appellant=s house, was there. Dalvin ate supper and appellant snacked. Appellant and Alvarado each drank four or five beers. Alvarado then left to attend a party in Ballinger. Appellant and Dalvin visited a neighbor. At about 10:30 p.m., appellant and Dalvin returned home. Appellant started to drink another bottle of beer and watch television in her living room. Dalvin did not want to watch television with appellant. He went to his room to watch cartoons on his television set.

Appellant went to sleep while watching the Jerry Springer show. She was awakened by Alvarado banging on her front door and calling out her name. Appellant opened the door and admitted Alvarado. A cloud of smoke coming from the back of the house enveloped them. Appellant yelled ADalvin, Dalvin@ while going toward Dalvin=s room. It was very hot, and the smoke was so thick that she could not see into Dalvin=s room. Appellant testified that she panicked and that

**7**

Alvarado was urging her to get out of the house. They both exited the house through the front door. They went around the house to a window in Dalvin=s room. Appellant broke the window and yelled Dalvin=s name. When appellant tried to climb through the window, a Alady cop@ pulled her out and told her to wait until help arrived. The officer took appellant across the street. Appellant became very distraught and other people held her, preventing her from returning to her house. She saw a volunteer fireman, wearing full bunker gear, go through the window into Dalvin=s room. The fireman passed Dalvin through the window to another volunteer fireman. Dalvin was rushed to the hospital by ambulance; appellant rode in the ambulance to the hospital. At the hospital, a doctor pronounced Dalvin dead. A number of witnesses testified that they saw appellant in the yard outside of her house while the house was burning.

Alvarado, who at the time of trial was serving time in prison for a felony conviction, was a trial witness. Alvarado testified that after the party he attended in Ballinger, he returned to Winters; he noticed smoke coming from underneath the back door of appellant=s house. He found the back door was locked. Alvarado went around to the front door and found it was locked. He pounded on the front door and yelled appellant=s name. Appellant finally opened the door and appellant and Alvarado tried to go to the back of the house but it was too hot and there was too much smoke. It was difficult to breathe and they both left the house through the front door. They went around the house and broke the window in Dalvin=s room. Alvarado testified he entered Dalvin=s room through the window; it was hot and smoky; he had trouble breathing and had to leave the room. Alvarado again tried to enter the room but an officer pulled him away from the window.

Donald Turk, a certified fire investigator, who had been employed by the State Fire Marshal for eighteen years, conducted an investigation of the fire to determine its origin and cause. Without objection, Turk was qualified as an expert witness. Turk used a dog trained to detect accelerants at fire scenes. Turk testified that the fire started just inside the back door at floor level and that the fire had been intentionally set. Turk determined that ethanol, Aa substance associated with whiskey,@ was the accelerant used. Because of the use of the accelerant, the fire spread rapidly and produced very intense heat. Turk testified that he could definitely say, without doubt, that appellant was not in the house when the fire was burning; no one in the living room could have survived. He testified appellant could not have been asleep in the living room and then have gone back through the house while the fire was burning and survived. Turk estimated the heat in the living room was 1900 degrees Fahrenheit.

After the doctor pronounced Dalvin dead, appellant called William Baird, the Runnels County Sheriff. Sheriff Baird, who had known appellant for more than twenty years, came to the hospital and to comfort appellant, hugged her. Sheriff Baird then went into the room where Dalvin=s body was to arrange for an autopsy. Baird noticed a very strong smell of smoke in that room where the body was. Baird testified he had not noticed the smell of smoke when he hugged appellant.

Joe Stokes, a Runnels County deputy sheriff, testified that when he was at the hospital he did not notice the smell of smoke on appellant. Later in the day, Stokes obtained the sweatshirt and slacks that appellant had been wearing at the time of the fire. Stokes placed the clothing in an air-tight metal container. That metal container and appellant=s clothes were admitted in evidence.

Appellant=s daughter, Tanya Brockington, was at the hospital where she comforted and hugged appellant. Tanya did not notice the smell of smoke when she hugged appellant at the hospital. However, Tanya smelled smoke in the car when she and appellant left the hospital. Tanya saw a deputy sheriff obtain the clothes appellant had been wearing before the clothes were washed. Chris Ozbirn was the fireman who was wearing the full bunker gear that went into the house to get the victim. Ozbrin testified that, while he was in Dalvin=s room, he broke the seal on his mask momentarily and inhaled smoke. He testified the heat was intense and the smoke was thick. He could not have survived without the special gear and breathing apparatus he was wearing. Because of the smoke he inhaled, he was treated at the hospital with oxygen therapy.

Appellant argues that the evidence is factually insufficient because there is evidence refuting the State=s case which was posited Aon appellant=s not being in the house and therefore unable to supervise the child and that this lack of supervision resulted in the child dying from smoke inhalation when the house was set on fire.@

The jury is the exclusive judge of the facts, of the credibility of the witnesses, and of the weight to be given their testimony. *See* Tex. Code Crim. Proc. Ann. art. 36.13 (West 1981); *Margraves v. State*, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the exclusive province of the jury. *Margraves*, 34 S.W.3d at 919. The jury may accept portions of a witness=s testimony and reject portions of the testimony. *Id.*; *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).

After neutral consideration of all of the evidence, and after giving proper deference to the jury=s verdict, we conclude that the evidence of appellant=s guilt is not so weak as to undermine confidence in the jury=s determination, nor is proof of guilt greatly outweighed by contrary proof. The evidence is factually sufficient to support the jury=s verdict. Appellant=s third point of error is overruled.

The judgment is affirmed.

_____

Carl E. F. Dally, Justice

Before Justices Kidd, Yeakel and Dally[*]

Affirmed

Filed: April 3, 2003

Do Not Publish

**11**

*   Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).