# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-02-00459-CR

**Gary Lane Moyer, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 1 OF WILLIAMSON COUNTY
NO. 00-4695-1, HONORABLE KEVIN HENDERSON, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

Appellant Gary Lane Moyer appeals his Class A misdemeanor conviction for assault upon his wife, Marsha Moyer, by choking her with his hands. *See* Tex. Pen. Code Ann. § 22.01(a)(1) (West 2003).[1] The jury found appellant guilty and the trial assessed punishment at confinement in the county jail for one year and a fine of $4,000. The imposition of the sentence was suspended and appellant was placed on probation subject to certain conditions.

---

[1] The misdemeanor information alleged in pertinent part that on or about August 6, 2000 appellant "intentionally, knowingly, recklessly cause[d] injury to Marsha Moyer, a member of the family or household of the defendant, by choking Marsha Moyer with his hands." The "member of the family or household" language was apparently taken from section 22.01(b)(2), but there was no allegation or proof of a similar prior offense under section 22.01. *See* Tex. Pen. Code Ann. § 22.01(b)(2) (West 2003).

**Points of Error**

Appellant advances two points of error. Appellant claims that the trial court abused its discretion in denying the motion for new trial based on the claim of ineffective assistance of counsel (1) in violation of the Sixth and Fourteenth Amendments to the United States Constitution and (2) in violation of article I, section ten of the Constitution of the State of Texas.

With regard to the points of error, appellant states in his brief that his trial counsel's conduct was deficient as follows:

1. Trial counsel pursued an objectively unreasonable strategy of either not objecting to or introducing countless extraneous offenses during the State's case-in-chief without any judicial determination that these extraneous offenses were admissible under Tex. R. Evid. 404(b).

2. Trial counsel pursued an objectively unreasonable strategy of either not objecting to or introducing countless extraneous offenses during the State's case-in-chief without any judicial determination that these extraneous offenses were admissible under Tex. R. Evid. 403.

3. Trial counsel pursued an objectively unreasonable strategy of eliciting inadmissible hearsay from State's witness Roma Schubert that corroborated the complainant as to her version of events.

4. Trial counsel pursued an objectively unreasonable strategy of not objecting when the prosecutor told jurors in final argument that if Appellant was "a beater in 1991, you're going to be a beater in 2000."

5. Trial counsel failed to adequately prepare Appellant to testify so that he could have made a knowing and voluntary decision as to whether to testify on his own behalf.

6. Trial counsel failed to tell the prosecutor of the results of a polygraph examination that Appellant passed in an effort to have this case dismissed or handled as a deferred disposition.

2

Appellant further claims that counsel's deficient conduct prejudiced him to the extent of depriving him of a fair trial.

## Background and Facts

Prior to trial, without a request from appellant, the State filed two written notices that other crimes, wrongs, and acts of misconduct "may be presented" at trial. *See* Tex. R. Evid. 404(b). The first notice listed certain acts committed against the complainant, Marsha Moyer, between 1994 and 2001, such as choking, hitting, slapping, verbal abuse, and acts earlier committed against other named women. The second notice listed acts committed by appellant against the complainant during 1999 and 2000.

There appears to have been a tentative agreement between the parties that they would approach the bench before extraneous matters involving the complainant would be offered into evidence. Appellant vigorously opposed any attempt to introduce extraneous offenses concerning third parties.

In his opening statement, trial counsel told the jury that the claims of domestic violence did not begin on August 6, 2000, the date of the alleged offense, but started seventeen days after the couple married in 1991, and this was followed shortly thereafter by a divorce petition with allegations "hauntingly familiar to what she's telling you now." Counsel referred to the increase in the net worth of the complainant during marriage and stated that she was a "gold digger." Counsel expected the evidence to show that the complainant had filed a divorce suit forty-eight hours after the assault charge on August 6, 2000, and noted that she was asking "a million dollars in exemplary damages" because of domestic violence. Counsel told the jury that appellant could not be convicted

3

on complainant's testimony. Counsel promised that he would produce a witness who saw the complainant the day after the alleged assault and did not see a mark on her.

**Direct Examination of Complainant**

The State's first witness was the complainant. She testified that she and appellant each had been married and divorced from others and each had children from the previous relationships. They met through a video dating service in 1988 or 1989 and married in 1991. The State then elicited from her, without objection, that as a result of a choking incident seventeen days after their marriage, she had filed for divorce alleging domestic violence. She did not report the matter to the police. There was a reconciliation and the divorce suit was dismissed.

The State then launched an inquiry about other extraneous matters. The complainant testified about being hit and choked on other occasions. The conduct, however, was not consistent and did not occur in public. In a somewhat disjointed fashion, she mentioned 1994, 1997, and 1998 as when these acts occurred. Still pursuing extraneous offenses without objection, the prosecutor elicited testimony about two incidents in July 2000. On one occasion, appellant threw her down on a bed, smothered her with a pillow, and twisted her leg. On the other occasion, appellant threw the complainant down, stomped her and "smeared his hands" over her face peeling her eyelids open.

Eventually, the interrogation turned to August 6. The complainant testified that about 5:30 p.m. she and appellant were eating their evening meal. She commented that her eldest daughter, who was leaving her employment in Dallas, had been complimented by her employer on her job performance. Appellant replied that was done just to be "politically correct." The complainant

4

responded that it would be nice if appellant could accept a compliment when it was offered to someone. As the complainant began to clear the dishes from the table, appellant jumped up, pushed her against the wall, hitting her head several times, placed his hand over her face, and told her that he wanted her "gone." Appellant then placed his hands around her neck and began to choke her. The complainant stated that she was able to pry the fingers of the much larger individual away from her throat and she "slipped away." She locked herself in the bathroom. Appellant pounded on the door and yelled for about ten minutes. Determining that appellant was no longer at the door, the complainant left her refuge and got to her automobile.

The complainant drove to the home of her long time hairdresser, Roma Schubert, and reported what had happened. After a conversation with Schubert, the complainant went to the Sheriff's office and gave a written statement. She later learned that appellant was arrested as a result of her complaint. Within a few days, a divorce suit was filed. A "CD/Rom" disk created from a recorded cellular telephone message was played for the jury. The complainant testified she had received the message from appellant on her cell phone on the evening of August 6, 2000. On the disk, appellant pleaded with the complainant to return home and was remorseful about his conduct, but did not admit to the acts later charged against him.

The complainant acknowledged that she had met with appellant on several occasions after August 6, 2000, but decided against reconciliation. She told the prosecutor that she was "asking for over a million dollars in the divorce"; that she "put a lot" into the marriage.

5

## Cross-examination of Complainant

On cross-examination, trial counsel established that when the complainant married appellant she only had about $8,000, knew appellant was a wealthy man, and was not happy with the prenuptial agreement regarding his company, Paper Resources, his separate property. The complainant acknowledged that she was seeking a million dollars in actual and exemplary damages and seeking alimony. The prenuptial agreement was also being questioned. All these matters were apparently dependent upon a finding of family violence. Counsel suggested, without receiving direct answers to his questions, that "this case is your ticket to a big payday in the divorce court" and that any civil judgment against appellant would have "to be paid out of his company."

Further, trial counsel revisited all the extraneous offenses mentioned on direct examination. Counsel established that the complainant was claiming that during approximately nine years of marriage, appellant had choked and smothered her and punched her all over the body; that on occasion appellant had grabbed her hair, pulled open her eyelids, "smeared" his hands on her face, and pinched and twisted her nipples. Counsel used a chart or list in the jury's presence to emphasize the numerous assaults that she claimed in her divorce petition or otherwise that appellant had inflicted upon her. Counsel also elicited from the complainant that appellant had raped her in 1999, and that in a divorce hearing she had testified that appellant had threatened to kill her "probably 20 times." The complainant acknowledged that in the divorce case appellant had testified and denied the physical abuse. Counsel elicited the fact that the complainant had never reported a single incident to the police. The complainant stated that she received an eye injury in 1997, but she did not seek medical help until 2000 after the divorce suit was filed and she was seeking money.

6

**Other Evidence**

Roma Schubert testified for the State that she was the complainant's hairdresser; that on the evening of August 6, 2000, the complainant arrived at the Schubert home; that the complainant's face and eyes appeared puffy and there were red marks or redness on her neck; and that the complainant reported what had happened earlier. After a conversation of one hour, the complainant left for the Sheriff's office.

Sergeant James Maugham of the Williamson County Sheriff's Office took a family violence complaint from the complainant on the evening of August 6, 2000, concerning an assault in appellant's rural home near Florence. Maugham observed the complainant's puffy face, a busted lip, and the redness on her neck. He testified that appellant was arrested later that evening.

The only defense witness was Johnnie Jacobson, a neighbor, who knew both appellant and the complainant. He testified that on August 7, 2000, at the complainant's request, he helped remove the complainant's belongings from the house. He used appellant's truck to transport the complainant's property to the home of the complainant's mother in Victoria. Jacobson saw no marks on the complainant and observed nothing unusual about her the day after the alleged offense.

As noted, the jury convicted appellant, and the trial court placed appellant on probation.

**Ineffective Assistance of Counsel**
**The Standard of Review**

The Sixth Amendment to the United States Constitution guarantees the right to the reasonably effective assistance of counsel in a state criminal proceeding. *McMann v. Richardson,*

7

397 U.S. 759, 771 n.14 (1970); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim. App. 1986). In *Strickland v. Washington*, 466 U.S. 668, 689 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must show that (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. "Prejudice" is demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.—Austin 2000, pet. ref'd); *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd). Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable. *Strickland*, 466 U.S. at 687; *Oestrick v. State*, 939 S.W.2d 232, 237 (Tex. App.—Austin 1997, pet. ref'd). Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996); *Parmer*, 38 S.W.3d at 665.

The two-pronged standard for testing claims of ineffective assistance of counsel set out in *Strickland* has been adopted for Texas constitutional claims. *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Under the *Strickland-Hernandez* standard, any allegation of

8

ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Josey v. State*, 97 S.W.3d 687, 696 (Tex. App.—Texarkana 2003, no pet.). The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Lopez v. State*, 96 S.W.3d 406, 417 (Tex. App.—Austin 2002, pet. ref'd). Whether the *Strickland* test has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not through hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Banks*, 819 S.W.2d at 681. Any judicial review of a defendant's claim of ineffective assistance must be highly deferential to trial counsel. *Thompson*, 9 S.W.3d at 813. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

A reviewing court will not second guess through hindsight the strategy of counsel at trial. In the absence of direct evidence in the record of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation if any can be imagined. *Garcia*, 57 S.W.3d at 441; *Skeen v. State*, 96 S.W.3d 567, 580 (Tex. App.—Texarkana 2002, no pet.). The challenged conduct will not, under the circumstances, constitute deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it. *Garcia*, 57 S.W.3d at 441; *Thompson*, 9 S.W.3d at 814.

9

**Motion for New Trial**

In the instant case, unlike many on direct appeal, we have a record of trial counsel's reasons for his trial strategy. Appellant's counsel on appeal filed a motion for new trial based solely upon a claim of ineffective assistance of counsel. *See Reyes v. State*, 849 S.W.2d 812 (Tex. Crim. App. 1993) (ineffective assistance may be raised in motion for new trial).

At the hearing on the motion, appellant called Cole Spainhour, the prosecutor; Keith Hampton, an Austin attorney with whom trial counsel had briefly consulted pretrial; and trial counsel. The prosecutor explained some of his actions at trial. Hampton was asked a number of procedural legal questions. The prosecutor felt that trial counsel "did a great job in cross-examining." Hampton agreed that trial counsel's strategy was plausible and objectively reasonable. The hearing revealed that trial counsel had been licensed to practice law in Texas in 1979, had been a prosecutor in Dallas and Williamson counties, had been in private practice since 1987, had tried over 200 jury trials, and was certified in criminal law in 1989 by the Texas Board of Legal Specialization, State Bar of Texas, being the first lawyer in Williamson County to be so certified. Counsel stated that there had been no previous allegations or claims of ineffective assistance of counsel levied against him. He had obtained fourteen acquittals in criminal cases in Williamson County.[2]

---

[2] In argument at the hearing on the motion for new trial, one prosecutor observed that the number of acquittals was an exceptional record "given the Williamson County judicial system."

Counsel explained that he was confronted with defending appellant against the instant assault charge with a pending divorce suit. He knew that a conviction on the assault charge would result in an affirmative finding of family violence. *See* Tex. Code Crim. Proc. Ann. art. 42.013 (West Supp. 2003). Counsel recognized from consultation with appellant's divorce attorney and others that such an affirmative finding would severely impact the issues of alimony, the prenuptial agreement, and damages being sought by complainant.[3] From the depositions and divorce hearings, the State's Rule 404(b) notices, and other sources, counsel knew that the complainant was claiming the commission of numerous extraneous offenses occurred during the marriage from 1991 until the separation in August 2000, but that she had never reported any of these extraneous offenses to the police at the time they occurred.

Counsel consulted with attorney Hampton about the possibility that these numerous extraneous offenses might become admissible. Counsel became convinced that the extraneous matters would find their way into evidence. He stated that if the prosecutor limited himself on direct examination of the complainant to the August 6 incident, counsel would be constrained in every question on cross-examination to avoid opening the door to the extraneous matters while trying to effectively demonstrate the witness's bias and prejudice relative to her financial stake in the outcome of the criminal case. Counsel believed that regardless of a "bare bones approach" on cross-examination, there would be a mid-trial Rule 404(b)[4] hearing and the trial court would admit the

---

[3] Counsel revealed that he received a plea bargain offer of $1.00 fine upon a plea of guilty but with a finding of family violence. *See* Tex. Code Crim. Proc. Ann. art. 42.013 (West Supp. 2003). The offer was rejected for the reasons stated.

[4] Tex. R. Evid. 404(b).

extraneous offenses; that the prosecutor would "redirect on all those bloody extraneouses" and that he would then be defending against the "extraneouses" not mentioned on cross-examination. Counsel felt the jury would "figure out" that the extraneous matters came into evidence over his objection.

Counsel stated that he had to play the hand that he was dealt, that the complainant was "all about money" seeking a criminal conviction involving family violence in order to secure a million dollars; that her claims about other assaults and verbal abuse were so numerous, lengthy and detailed that they were "fantastic," particularly in light of the failure to report any of these matters to law enforcement or seek medical help at the time; and that all the evidence would reveal her as a liar then and now. Counsel testified:

> It was my belief that the dynamic of the case was such that I would do better against Mrs. Moyer if I seized the bull by the horns and brought them out myself either by letting Spainhour [prosecutor] to bring them out on his direct without objection or cross-examining them thoroughly the way I did.

Counsel expressed disappointment that his trial strategy was not successful, but stated that he would use the same strategy if he had to try the case again before a different jury.

Appellant's counsel on appeal sought to show by their interrogation that trial counsel's trial strategy was objectively unreasonable, exposing his client to the jury as a criminal generally, and failing to use procedural devices to protect his client as a part of his strategy. Trial counsel admitted that he did not seek a Rule 404(b) hearing prior to the testimony of the State's first witness, the complainant, in order to put the State to the burden of showing the purpose and

12

admissibility of the extraneous offenses listed in its Rule 404(b) notices. Counsel doubted that the trial court in its discretion would have allowed such procedure, which would have resulted in two trials, a lengthy evidentiary hearing and the trial itself. Not having requested a pretrial Rule 404(b) hearing, counsel did not ask to exclude any admitted evidence on the basis of Rule 403. Tex. R. Evid. 403. Likewise, counsel acknowledged that he did not ask for a limiting instruction concerning extraneous offenses. *See* Tex. R. Evid. 105(a). Counsel was of the opinion that if he had been able to exclude the extraneous offenses by virtue of a pretrial Rule 404(b) hearing or obtain limiting instructions on those admitted, all the extraneous offenses would still have come into evidence following his cross-examination. Appellant acknowledged being familiar with the *Maynard v. State*, 685 S.W.2d 60, 65 (Tex. Crim. App. 1985), and *Nicholas v. State*, 502 S.W.2d 169, 174-75 (Tex. Crim. App. 1973), line of cases,[5] but had not considered using that line of authority in the instant case.

Following the conclusion of the hearing, the trial court overruled the motion for new trial. We shall examine the reasons appellant advances to show an abuse of discretion in that ruling.

---

[5] It is a general rule that when a defendant offers the same evidence to which he earlier objected, he is in no position to complain on appeal. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993). A corollary to this rule is that there is no waiver in introducing the same evidence when a defendant is seeking to meet, destroy, or explain it by the introduction of rebutting evidence. *Maynard v. State*, 685 S.W.2d 60, 65 (Tex. Crim. App. 1985); *Nicholas v. State*, 502 S.W.2d 169, 174-75 (Tex. Crim. App. 1973). This rule is not one of "curative admissibility" but a harmless error type rule. *See Leday v. State*, 983 S.W.2d 713, 716-19 (Tex. Crim. App. 1998).

**Have Your Cake and Eat It Too**

In complaining that his trial counsel's trial strategy was objectively unreasonable, appellant contends that counsel pursued a strategy of "either not objecting to or introducing countless extraneous offenses during the State's case-in-chief without any judicial determination that these extraneous offenses were admissible" under Rules 404(b) and 403 of the Texas Rules of Evidence.

Appellant contends that there was a way for his trial counsel to have his cake and eat it too. He urges that in view of the State's two notices of intention to use extraneous offenses, counsel should have filed a motion in limine[6] or requested an evidentiary hearing based on Rule 404(b) prior to the testimony of the first witness. Under this procedure, the burden would have been placed on the State to demonstrate the relevancy and admissibility of each extraneous offense listed in the notices filed. *See generally Turner v. State*, 754 S.W.2d 668, 672 (Tex. Crim. App. 1988). Upon the trial court's ruling at the pretrial Rule 404(b) evidentiary hearing that the extraneous offenses were admissible, appellant argues that counsel could have then requested a Rule 403 hearing in an attempt to exclude the extraneous offenses on other grounds. At trial, when the

---

[6] A motion in limine would have availed appellant little. A ruling on a motion in limine does not purport to be one on the merits but one regarding the administration of the trial. *Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd). A traditional motion in limine is a motion requesting that the opposing party be directed to approach the trial court before offering certain types of evidence or otherwise going into particular areas before the jury. *Id.* It is axiomatic that motions in limine do not preserve error whether the motion is granted or denied. *Webb v. State*, 760 S.W.2d 263, 275 (Tex. Crim. App. 1988); *Harnett*, 38 S.W.3d at 655; *Patton v. State*, 25 S.W.3d 387, 392 n.3 (Tex. App.—Austin 2000, pet. ref'd).

extraneous offenses were offered, counsel, according to appellant, could have asked for a limiting instruction. *See* Tex. R. Evid. 105(a). Further, prior to the cross-examination of the complainant, counsel could have announced that he was going to interrogate her about the extraneous offenses to meet, destroy, explain or rebut the offenses. *See Maynard*, 685 S.W.2d at 65; *Nicholas*, 502 S.W.2d at 174-75 (defendant does not waive challenge to admissibility of evidence admitted over objection when he offers or uses such evidence to meet, explain or rebut it). Appellant's counsel on appeal argue that trial counsel could have thus preserved error as to the admission of the extraneous offenses and still have cross-examined the complainant at will under the "meet, destroy, and explain" doctrine.

The fact that another attorney, including appellant's counsel on appeal, might have pursued a different course of action at trial does not support a finding of ineffectiveness. *See Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Josey*, 97 S.W.3d at 696; *Skeen*, 96 S.W.3d at 579; *Lopez*, 96 S.W.3d at 417; *Banks*, 819 S.W.2d at 681. Therefore, we examine more closely the question of whether appellant's trial counsel could have had his cake and eaten it too.

## Pretrial Hearing

A pretrial evidentiary hearing on the admissibility of extraneous offenses or bad acts listed in the State's Rule 404(b) notices would certainly be discretionary with the trial court. Certainly such procedure, conducted, as appellant suggests, before the first witnesses testifies, is not a common procedure. Appellant cites no authority to support his contention. Moreover, one of the practical difficulties with the suggested procedure is that the case may in effect be tried twice in order to have all the pertinent evidence before the trial court before it rules on the admissibility of

15

each extraneous matter. If forced pretrial to establish the admissibility of extraneous offenses, the prosecution may seek a favorable ruling on every bad act listed, some of which may not have been used at trial. In the instant case, this could include extraneous offenses against third parties which trial counsel vigorously sought to avoid.

The procedure appellant now claims that his trial counsel should have followed presupposes a trial court's pretrial ruling that all the extraneous offenses were admissible. Otherwise, there would be no need for a request for a Rule 403 analysis or the need for limiting instructions under Rule 105(a) nor an announcement of the intention to meet, destroy, and explain extraneous offenses to prevent waiver of any error. What if the trial court's ruling at the pretrial hearing was that the extraneous offenses were inadmissible? Could trial counsel have had his cake and eat it too, under these circumstances? Failure to follow what another attorney now says that he would have done did not demonstrate deficient conduct and render trial strategy objectively unreasonable. *Banks*, 819 S.W.2d at 681.

**Hearsay Testimony**

Appellant urges that trial counsel's performance was deficient because he elicited "inadmissible hearsay from Roma Schubert that corroborated the complainant's version of events." Schubert was the hairdresser to whose home the complainant drove after the alleged assault. On cross-examination, trial counsel asked Schubert if the complainant had ever told about prior abuse. Schubert answered in the negative, pointing out that other things were discussed when "she was with me" on August 6, 2000. Counsel then sought to solidify that negative answer, but Schubert clarified

16

her answer to state that prior to August 6, the complainant had told her that appellant broke the complainant's nose.[7]

Counsel readily admitted that he had elicited hearsay. He explained that he was in the process of laying the predicate to impeach Schubert with her divorce-hearing testimony when she made her clarifying statement. Counsel, however, believed Schubert's interrogation was more helpful than harmful. Schubert's testimony confirmed that the complainant had not told her of prior abuse except the nose injury.

"A lawyer may well choose not to object to hearsay or other inadmissible evidence if it potentially enhances his client's defense or at least does not seriously prejudice it." *Thompson*, 9 S.W.2d at 812. Likewise, a lawyer may elicit hearsay for the same reason. Moreover, whether the *Strickland* standard has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of trial counsel, and the test is to be applied at the time of the trial, not through hindsight. *Wilkerson*, 726 S.W.2d at 548; *Banks*, 819 S.W.2d at 681. Further, the *Strickland* standard has never been interpreted to mean errorless or perfect counsel. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). Deficient conduct has not been shown with regard to Schubert's cross-examination.

**Jury Argument**

Appellant also contends that trial counsel pursued an objectively unreasonable strategy of not objecting when the prosecutor told jurors in final argument: "If you're a beater in

---

[7] The complainant had testified appellant broke her nose in 1997. She sought medical help for the nose only after the divorce suit was filed in 2000.

1991, you're going to be a beater in 2000." The areas of permissive jury argument are (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answer to argument of opposing counsel, and (4) a plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973); *see also Felder v. State*, 848 S.W.2d 85, 94-95 (Tex. Crim. App. 1992); *Gaddis v. State*, 753 S.W.2d 296, 298 (Tex. Crim. App. 1988); *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980). The complained-of argument was based on testimony from the complainant that appellant had beaten her in 1991, shortly after their marriage, and on the date of the charged offense, August 6, 2000. This testimony was elicited by the State without objection and later by appellant's trial counsel. There was no limiting instruction. The testimony was before the jury for all purposes. If counsel had objected to the argument, it would have been proper for the trial court to overrule the objection. Under these circumstances, no claim of ineffective assistance can be supported. The instant case is distinguishable from *Valencia v. State*, 966 S.W.2d 188, 190-91 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (failure to object to prosecutorial erroneous parole law argument was ineffective assistance), and *Oliva v. State*, 942 S.W.2d 727, 733-34 (Tex. App.—Houston [14th Dist.] 1997) (failure to object to prosecutorial jury argument commenting on defendant's failure to testify constituted ineffective assistance), *pet. dism'd*, *improvidently granted*, 991 S.W.2d 803 (Tex. Crim. App. 1998). Appellant's reliance on these cases is misplaced.

### Preparation to Testify

Appellant urges that his "trial counsel failed to adequately prepare appellant to testify so that he could have made a knowing and voluntary decision as to whether to testify on his own behalf." Appellant did not testify at trial. At the hearing on the new trial motion, there was a

18

conflict between appellant's affidavit which was introduced into evidence and the testimony of trial counsel as to whether appellant had even prepared to testify.[8] Witness credibility is determined by the trial court at a hearing on a motion for new trial. *Salazar v. State*, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001); *Lopez v. State*, 96 S.W.3d 406 (Tex. App.—Austin 2002, pet. ref'd). The trial court overruled the new trial motion.[9] No abuse of discretion was shown.

In *Perrero v State,* 990 S.W.2d 896, 899 (Tex. App.—El Paso 1999, pet. ref'd), counsel was held ineffective for failing to adequately prepare the defendant to testify. In *Perrero*, the defendant testified at trial, and both counsel and the defendant later agreed at the new trial hearing that there was inadequate preparation. Underlying the *Perrero* decision was the fact that counsel was unaware that if the defendant testified he could be impeached by his prior criminal record. *Id.* at 899. *Perrero* is distinguishable from the instant cause.

---

[8] Appellant's counsel on appeal acknowledged that trial counsel was "almost evangelical" in his assertion that he had prepared appellant to testify but did not believe appellant would be a good witness.

[9] There was evidence in the record that appellant had testified in the divorce hearings. He had denied his wife's allegations about assault, but had admitted that he had beaten his ex-wife. Appellant was described as loquacious. In his affidavit, appellant admitted that trial counsel had prepared him not to open the door for the State if he testified by never saying "never" as in "I've never been arrested for anything." Appellant complained of the lack of a suggestion for a mock trial where he could have been cross-examined. He was not informed what to expect on direct examination. Appellant expected to testify but accepted counsel's decision at the close of the State's case.

## The Polygraph Test

Appellant complains that trial counsel was ineffective because he "failed to tell the prosecutor of the results of a polygraph examination that appellant passed in an effort to have this case dismissed or handled as a deferred disposition."

The results of a polygraph examination are not admissible into evidence. *See Nethery v. State*, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985); *Sparks v. State*, 820 S.W.2d 924, 927 (Tex. App.—Austin 1991, no pet.). Trial counsel testified that he put appellant in touch with Eric Holden, a well known polygraph operator in Dallas, who was respected and trusted by law enforcement. Even with a favorable report from Holden, counsel expected that there would be retest by a polygraph operator for the police. What counsel received was a letter from a Houston lawyer that he did not know including a polygraph report from an operator of whom he had no knowledge. Appellant acted contrary to counsel's advice. Counsel did not trust the "podunk polygraph" and decided not to take it to the prosecutor. Knowing that most prosecutors were not favorably inclined to polygraph tests, counsel had not anticipated any great success even if Holden had performed the examination. Counsel also feared that the polygraph report could be subpoenaed because it had not been conducted under auspices of the attorney-client relationship.

The prosecutor testified that he had been with the County Attorney's office for three years and had never been presented with polygraph results by the defense; he would not give much weight to polygraph tests.

The polygraph report and results were offered into evidence at the hearing on the new trial motion. The report reflects appellant was given "a specific type polygraph examination"

20

without further description. The report also stated that in the opinion of the examiner, after interpretation of the charts, there was "no consistent criteria indicative of deception to any of the above-referenced questions (answers?)." The report concluded appellant was being truthful in denying that he abused Marsha Moyer or injured her on August 6, 2000 and when he stated that in the last ten years he had not inflicted a *serious* bodily injury on a female. Appellant has not demonstrated that his trial counsel's failure to present the polygraph results to the prosecutor was deficient conduct under *Strickland*.

We conclude that appellant has failed to meet the two-pronged standard of *Strickland*. The trial court did not abuse its discretion in overruling the motion for new trial based on ineffective assistance of counsel. Points of error one and two are overruled.

The judgment is affirmed.

_____

John F. Onion, Jr., Justice

Before Chief Justice Law, Justices B. A. Smith and Onion[*]

Affirmed

Filed:   June 5, 2003

Do Not Publish

[*]   Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

21