# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00148-CR

**Raymond Davis, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT NO. 3021547, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Raymond Davis guilty of aggravated robbery with a deadly weapon. Tex. Pen. Code Ann. § 1.07(a)(17) (West Supp. 2004), § 29.03(a)(2) (West 2003). The court imposed a twenty-two-year prison term. On appeal, Davis challenges the legal and factual sufficiency of the evidence to support the deadly-weapon element of the offense. He also contends that the trial court erred in refusing to grant a hearing on the admissibility of a videotaped statement he made to law enforcement and in overruling his motion to dismiss his court-appointed attorney. Finally, he argues that he received ineffective assistance of counsel. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Davis and Reginald Bedford approached Tanner Theile as he walked toward his car after installing cable at a job site. Davis and Bedford asked Theile for a cigarette; Theile replied that he had one in his car they could share. While Theile was getting into his car, Davis reached in and grabbed the car keys from Theile's lap. Davis then allegedly told Bedford to "get out the knife." Bedford produced a long-blade buck knife,[1] and the two men demanded Theile's money. Theile testified, "They said, 'I'll count to twenty. If you don't give me the money by then, I'll use this.' And just threats like that."

Theile gave the two men his cash, which totaled twelve dollars. After the men took his money, Theile asked if he could have some of the money back because he was nearly out of gas. Davis and Bedford returned two dollars and the car keys to Theile and quickly walked away.

While taking Theile's statement shortly after the robbery, Officer Flippin described Theile as very upset and nervous, both his hands and body were shaking, and he was rapidly smoking cigarettes.

After being apprehended, Davis gave a videotaped statement to the police, in which he admitted to being at the crime scene with Bedford but denied playing a part in the robbery, saying that he had tried to talk Bedford out of completing the crime. He also indicated that Bedford may have held something in his hand, perhaps a screwdriver or a knife. Davis referred to "ten dollars" several times during the interview, implying that it would not have been worth it to rob Theile for such a small sum of money. Bedford pleaded guilty to the aggravated robbery and was convicted.

---

[1] According to Theile's testimony, the knife's blade was about six inches long.

In his interview with law enforcement, Bedford implicated Davis as a participant in the robbery and as the wielder and owner of the knife. The two investigating police officers testified that a long-blade buck knife could, in the way it was used or intended to be used, cause serious bodily injury or death. The knife was never introduced into evidence.

## DISCUSSION

### *Deadly weapon*

A robbery becomes an aggravated robbery if the actor "uses or exhibits a deadly weapon." Tex. Pen. Code Ann. § 29.03(a)(2). "Deadly weapon" is defined as

    (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

    (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

*Id.* § 1.07(a)(17). Only the second part of this definition is at issue here, as knives are not considered deadly weapons *per se*. *See McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000); *Brown v. State*, 651 S.W.2d 782, 783 n.2 (Tex. Crim. App. 1983). The court of criminal appeals has held that an object such as a knife can be a deadly weapon if the actor intends a use of the object in which it would be *capable* of causing death or serious bodily injury. *McCain*, 22 S.W.3d at 503 (butcher knife visible from back pocket of appellant while he beat and robbed complainant could support deadly-weapon finding, although appellant did not touch, brandish, or refer to knife during robbery).

3

Davis seems to be contesting only whether the six-inch buck knife could be a deadly weapon under the facts of this case, not whether he or his accomplice actually used or exhibited the knife during the robbery. *See id.* Thus, we need consider only whether a six-inch buck knife could be a deadly weapon under these facts.

A deadly weapon is "anything that in the manner of its use or intended use is *capable* of causing death or serious bodily injury." Tex. Pen. Code Ann. § 29.03(a)(2) (emphasis added). The actor need not actually intend death or serious bodily injury but need only intend a use of the object in which it would be capable of causing death or serious bodily injury. *McCain*, 22 S.W.3d at 503. Thus, the statute covers conduct that merely *threatens* deadly force, even if the actor has no intent of actually using deadly force. *Id.* (citing *Tisdale v. State*, 686 S.W.2d 110, 114-15 (Tex. Crim. App. 1984)).

When reviewing the legal sufficiency of the evidence, we look at all the evidence in the light most favorable to the verdict to determine whether a rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury as trier of fact is entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

Davis urges that because neither the actual knife nor a replica were admitted into evidence and because the police officers testified merely that "*a*" long-blade buck knife—not the one

4

used to commit the robbery—could cause serious bodily injury or death, the State failed to meet its burden to prove that the knife used in this case was capable of causing serious bodily injury or death and was thus a deadly weapon. *See Johnston v. State*, 115 S.W.3d 761, 763 (Tex. App.—Austin 2003, pet. granted) (citing *McCain*, 22 S.W.3d at 503) (affirmative deadly-weapon finding must be based on specific facts of specific criminal episode). An alleged deadly weapon's capability of causing death or serious bodily injury in the manner of its use or intended use must be evaluated in light of the facts that actually existed when the felony was committed. *Brown v. State*, 716 S.W.2d 939, 946-47 (Tex. Crim. App. 1986); *Johnston*, 115 S.W.3d at 764.

The State is not required to introduce the knife into evidence to meet its burden of proof. *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Morales v. State*, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982)). Nor is expert testimony required to establish that a weapon is deadly. *Davidson v. State*, 602 S.W.2d 272, 273 (Tex. Crim. App. 1980). Also, the State need not show that any wounds were inflicted to prove that the knife was a deadly weapon. *Id.*; *Victor*, 874 S.W.2d at 751. A knife may be a deadly weapon, depending on its size, shape, and sharpness; the manner of its use or intended use; and its capacity to cause death or serious bodily injury. *Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). Factors such as the manner of the knife's use, the size of the blade, the victim's description of the knife, express and implied threats made by the accused, or the physical proximity of the accused and the victim may be offered to establish a knife's capacity to cause serious bodily injury or death. *See Brown*, 716 S.W.2d at 946; *Victor*, 874 S.W.2d at 751.

The facts of this case are more like those in which a knife's deadly character has been upheld than those in which such finding has been rejected. *Compare Billey v. State*, 895 S.W.2d 417 (Tex. App.—Amarillo 1995, pet. ref'd) (evidence about size of knife and its injurious capability, appellant's proximity to appellant, and implied threat to use knife against complainant if she did not comply was sufficient), *and Petrick v. State*, 832 S.W.2d 767 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd) (appellant's advancement towards complainant while brandishing knife with five-inch blade was sufficient), *with In re J.A.W.*, 108 S.W.3d 573 (Tex. App.—Amarillo 2003, no pet.) (lack of evidence regarding knife's size, shape, or sharpness and its capacity to produce death or serious bodily injury; proximity between appellant and complainant; or threats pertaining to use of knife); *Victor*, 874 S.W.2d 748 (lack of evidence describing size of pocket-knife's blade, appellant's proximity to complainant, or verbal or physical threats).

Viewing the evidence in the light most favorable to a deadly-weapon finding, we conclude that it is legally sufficient to support the verdict. Theile testified that the knife was a "buck" knife[2] with a blade of six inches; two police officers testified that a knife of that type and size could cause serious bodily injury or death; Davis and Bedford exhibited the knife prior to demanding Theile's money and made explicit threats to "use" the knife if Theile did not comply; Davis had already grabbed Theile's keys from his lap; Davis and Bedford were close enough to Theile to reach inside the car window and take his keys; Davis and Bedford outnumbered Theile; and Theile was

---

[2] "Buck" knife is short for "buckhorn knife," which is a knife with a handle made from the horn of a buck (male deer or antelope). This type of knife was formerly used in poker to mark the next player to deal, hence the saying "pass the buck." *See* Webster's Third New International Dictionary 288 (1986).

visibly frightened by the episode. This evidence is sufficient for a rational fact-finder to find that Davis and Bedford's intended use of the knife made it capable of causing death or serious bodily injury. We overrule Davis's first point of error.

In a factual-sufficiency review, the reviewing court "views all the evidence without the prism of 'in the light most favorable to the prosecution,'" and sets aside the verdict only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In such a review, the court asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is too weak or that the contrary evidence is too strong to rationally support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). In other words, was a jury rationally justified in finding guilt beyond reasonable doubt? *Id.* Appellate courts are not free to reweigh the evidence and set aside a jury verdict merely because the reviewing judges feel that a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. A factual-sufficiency review must employ appropriate deference to the fact-finder's role as the sole judge of the weight and credibility to be given to witness testimony. *Johnson*, 23 S.W.3d at 7.

As we have discussed, there was evidence concerning the knife's type and blade size, the capability of such a knife to cause serious bodily injury or death, the proximity of Davis to Theile, verbal threats to use the knife, and Theile's fright. Viewing all the evidence in a neutral light, we conclude that the proof of Davis's intended use of a deadly weapon is not too weak to rationally support a finding of guilt beyond a reasonable doubt. We overrule Davis's second point.

*Evidentiary hearing*

In his third point, Davis contends that the trial court erred in refusing to grant a hearing on the admissibility of his statement to law enforcement officers before admitting it into evidence. The State responds that Davis never asked for a hearing on the matter. Our review of the record indicates that the State is correct. Although Davis requested a pretrial hearing in an attempt to avoid going to trial, he never indicated any concern about his statement to law enforcement from which a court could reasonably infer that he was requesting a hearing on that matter.[3] Indeed, from the context of the proceedings, Davis's references to a "pretrial" were best understood as attempts to delay or avoid going to trial due to his dissatisfaction with his court-appointed attorney. Nowhere in the record does Davis mention his appellate complaint about his statement—he doesn't contest its voluntariness or the State's failure to give *Miranda* warnings.[4] *See* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 6 (West 1979). Because Davis did not specifically alert the court to his concern

---

[3] The court asked if Davis wanted to be heard, and he replied: "Sir, I wish not to go to jury trial with Mr. Nettles [his court-appointed attorney]. I didn't ask for a jury trial. What else? Can I have a pretrial first before a jury trial?" After the court informed Davis that his case had already been through a pretrial setting and that he had two competent attorneys representing him, Nettles explained to the court that at the pretrial he and the State had agreed that an out-of-court identification would be suppressed and, since then, that certain portions of Davis's statement to law enforcement would be limined out. Davis then stated, "The statement—because I—excuse me. My statement was I got to see him. So I'm responsible for what the next man do? How is that?" The trial court could not reasonably have construed this exchange to be a request for a hearing on whether his statement to law enforcement was admissible.

[4] At the beginning of the videotaped statement, the interrogating officers read Davis his *Miranda* rights and asked if he understood them. Davis replied that he did and appeared to be voluntarily participating in the interview.

8

about his statement to law enforcement or request a hearing on the matter, he waived the right to a hearing and has not preserved the issue for our review.[5]  We overrule the third point of error.

### *Trial counsel*

In his fourth and fifth points of error, Davis contends that the trial court erred in overruling his motion to dismiss his court-appointed attorney and that he received ineffective assistance of counsel because of that attorney's representation.  Davis urges that his trial attorney, Malcolm Nettles,[6] entered into an agreement with the State, against his wishes, to exclude certain portions of his statement made to law enforcement officers.  Davis asserts on appeal that the statement should have been excluded in its entirety because it was not voluntary and was not preceded by a recitation of his *Miranda* rights.  *See* Tex. Code Crim. Proc. Ann. art. 38.22; *Miranda v. Arizona*, 384 U.S. 436, 475 (1966); *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964); *Moore v. State*, 505 S.W.2d 887, 889 (Tex. Crim. App. 1974).

A defendant must accept counsel assigned by the court unless he effectively waives the right to counsel in favor of self-representation or can show adequate cause for the appointment of another attorney.  *Reddic v. State*, 976 S.W.2d 281, 283 (Tex. App.—Corpus Christi 1998, pet. ref'd) (citing *Thomas v. State*, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977)).  A trial court has no duty

---

[5]  *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (in cases where question is raised as to voluntariness of statement of accused, trial court must make finding as to statement's voluntariness); Tex. R. App. P. 33.1 (to preserve error for appellate review, party must have presented to trial court timely request, objection, or motion stating specific complaint); *Moore v. State*, 505 S.W.2d 887, 889 (Tex. Crim. App. 1974) (specific objection about voluntariness of statement was sufficient to require court to have hearing, despite defendant's failure to formally request hearing).

[6]  The trial court appointed an additional attorney for Davis on the day of his trial; Davis does not allege any errors resulting from that attorney's representation.

to search for an attorney agreeable to the defendant. *Malcolm v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982); *Reddic*, 976 S.W.2d at 283. Once the court has appointed an attorney to represent a defendant, the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments and article 26.04 of the Texas Code of Criminal Procedure regarding counsel. *See* U.S. Const. amends. VI, XIV; Tex. Code Crim. Proc. Ann. art. 26.04 (West Supp. 2004); *Malcolm*, 628 S.W.2d at 791. If a defendant is displeased with his appointed counsel, he must bring the matter to the court's attention and has the burden of proving that he is entitled to a change of counsel. *Malcolm*, 628 S.W.2d at 791.

Davis's motion to dismiss merely alleged that Nettles "has failed to file the appropriate and requested pre-trial motions necessary to the adequate and reasonable defense to the charge pending against [me]" and that there was an antagonistic relationship between Davis and Nettles. Davis's motion did not identify any particular motions that should have been filed. Although it is true that as of the date Davis filed this motion, Nettles had not yet filed a motion to suppress the videotaped statement, Nettles did file such motion within the month. The court then denied Davis's motion to dismiss Nettles about a month after the motion to suppress was filed. Davis makes no claim that any particular motions should have been filed that were not, nor has he claimed that such motions had any reasonable probability of being granted or of impacting the outcome of the trial.

Davis contends for the first time on appeal that Nettles entered into an unauthorized agreement with the State to admit portions of his videotaped statement. However, Davis did not bring this to the attention of the trial court either in his motion to dismiss Nettles or at trial when he

10

sought to have Nettles dismissed. Furthermore, he has not pointed to any harm that resulted from the admission into evidence of portions of the statement, nor can we infer any.[7] Because Davis was provided his *Miranda* warnings before being interviewed, there is nothing in the record to indicate that the statement was not voluntary, and Davis has pointed us to no other reason why the statement could properly have been suppressed. Davis bears the burden of making the court aware of his dissatisfaction with counsel, stating the grounds for his dissatisfaction, and substantiating his claim. *Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985). Davis has shown us no error in the trial court's denial of his motion.[8] The court of criminal appeals has historically affirmed trial judges' decisions in refusing defendants' motions to dismiss court-appointed attorneys. *Malcolm*, 628 S.W.2d at 791. We hold that Davis did not meet his burden of proving that he was entitled to a change of counsel. We overrule his fourth point of error.

A defendant is constitutionally entitled to reasonably effective assistance of counsel. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). However, this constitutional right does not entitle a defendant to errorless counsel or counsel whose competency is judged by hindsight. *Garcia*, 57 S.W.3d at 440. "The fact

---

[7] We note that Nettles's trial strategy may have demanded such action, for instance if there were no legal basis to attempt to suppress the entire statement, which appears to be the case.

[8] Also, the record does not reflect any request by Davis for a hearing on his motion to dismiss Nettles, other than his vague request for a "pretrial" without specifying the issue that required the pretrial hearing. A trial court is not required sua sponte to hold a hearing on a defendant's motion to dismiss court-appointed counsel. *Malcolm v. State*, 628 S.W.2d 790, 792 (Tex. Crim. App. 1982); *see also Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985) (error not preserved when defendant does not request hearing on motion to dismiss); *Cain v. State*, 976 S.W.2d 228, 236 (Tex. App.—San Antonio 1998, no pet.) (same). The record also indicates that Davis's motion to dismiss had already been denied by another judge two weeks before the trial.

that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness." *Banks v. State*, 819 S.W.2d 676, 681 (Tex. App.—San Antonio 1991, pet. ref'd).

In assessing the effectiveness of counsel, Texas courts adhere to the test set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and adopted by *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). Under the *Strickland* test, the defendant must first show that counsel's performance was deficient, *i.e.*, that his assistance fell below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Second, appellant must affirmatively prove prejudice by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *Blevins v. State*, 18 S.W.3d 266, 271 (Tex. App.—Austin 2000, no pet.). Failure to make both the required showing of deficient performance and sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 790; *Thompson*, 9 S.W.3d at 813. Under *Strickland*, a defendant has the burden to prove a claim of ineffective assistance of counsel by a preponderance of the evidence. *Thompson*, 9 S.W.3d at 813; *Parmer v. State*, 38 S.W.3d 661, 665 (Tex. App.—Austin 2000, pet. ref'd).

The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case. *Lopez v. State*, 96 S.W.3d 406, 417 (Tex. App.—Austin 2000, pet. ref'd). Whether the *Strickland* test has been met is to be judged by the "totality of the representation," not by isolated acts or omissions of trial counsel, and the test is applied at the time

12

of the trial, not through hindsight. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); *Banks*, 819 S.W.2d at 681. There is a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

Claims of ineffective assistance of trial counsel can be properly raised on appeal if the appellate record is sufficiently developed. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). In most cases the trial record alone will be insufficient.[9] *See Thompson*, 9 S.W.3d at 813. The record can be developed by a hearing on a motion for new trial. *See Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Davis did not move for a new trial alleging ineffectiveness of counsel. The record is therefore silent as to trial counsel's strategies. When the record is silent as to possible trial strategies, we will not speculate as to why counsel acted in a particular way. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *Blevins*, 18 S.W.3d at 271. If there is no evidentiary hearing on the issue of effectiveness, the defendant's burden is difficult to meet, and rarely will we find counsel was ineffective. *Blevins*, 18 S.W.3d at 271-72 (quoting *Thompson*, 9 S.W.3d at 813).

On this record, we conclude that trial counsel's representation of Davis was more than adequate. Davis has not carried his burden of showing that his trial counsel's performance fell outside the range of reasonable professional assistance, was not based on sound trial strategy, or

---

[9] In cases where the record is undeveloped and cannot adequately reflect the motives of trial counsel, a writ of habeas corpus is the more appropriate method of raising ineffective assistance of counsel. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).

prejudiced his defense. *See Blevins*, 18 S.W.3d at 271. The alleged errors pertaining to Davis's videotaped statement and counsel's agreement with the State to exclude certain portions of it, if errors at all, were not so egregious as to undermine our confidence in the outcome of the trial. *See Thompson*, 9 S.W.3d at 812-13. Davis's fifth point of error is overruled.

## CONCLUSION

For the foregoing reasons, we overrule Davis's points of error and affirm the trial court's judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed:   May 27, 2004

Do Not Publish