TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00726-CR






Christopher Eugene Wimberly, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 54,705, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N




 Christopher Eugene Wimberly appeals from his conviction for aggravated robbery. 
See Tex. Pen. Code Ann. § 29.03(a)(2) (West 2003). After the jury found appellant guilty, the court
assessed punishment and sentenced appellant to fifty years' confinement. We affirm the trial court's
judgment.


Background



The Robbery


 At approximately 10:45 p.m. on December 23, 2002, Phillip Wynn went out the back
door of a Pizza Hut in Killeen, Texas, to load pizzas for delivery to a local shopping mall. He felt
a weapon in his chest and was pushed back into the store. Inside the well-lit store, he saw that the
gun was a .12-gauge pump-action shotgun. Once inside, the robber told Wynn to put down the
pizzas and get on the floor, orders with which Wynn complied. Gerard Giosio, the store manager,
was doing paperwork at his desk when he heard a noise; he turned and saw Wynn backing into the
store with a gun to his chest. Giosio, about six feet away, asked what was going on, and the robber
turned the gun on him and demanded money. Giosio walked toward the front of the store to get to
the safe while the robber held the gun to Giosio's back. Wynn retreated to the walk-in cooler as soon
as the robber's attention was on Giosio.

 The shift manager, Ida Rodriguez, was at the front of the store counting the day's
money. The safe was open and there was money on the counter. Rodriguez immediately began
handing the money to the robber. After taking the money, the robber told everyone to get on the
floor, which they did. Giosio looked up to see whether the robber had left; Jared Castro, another
employee at the back of the store, yelled that the robber was gone. (1)


The Robber's Identification


 Giosio described the robber as a black man dressed in a heavy black winter coat with
the hood pulled up and the drawstring tied tightly so that it "squished" his face. Despite this, Giosio
said that he could see the robber's eyes, nose, cheeks and mouth. When asked about the robber's
size, Giosio stated that he was about six feet tall, two hundred pounds, and in his early to mid
thirties. Giosio did not get a full direct look at him but stated that the robber looked like a driver
who worked part-time for Giosio. (2) Giosio viewed a photo lineup and was "80% certain" that
appellant was the robber. When given an initial photographic lineup, Giosio did not identify anyone
as the robber. (3) Giosio later identified appellant in another photographic lineup; he focused his
attention on the eyes, the feature he noticed the most, by folding a strip of the photos out of the way. 
Giosio identified appellant in court to the same 80% degree of certainty that he had about the
photographic identification.

 Wynn, who was in the military, was working part time delivering pizzas for extra
money for Christmas. He had been in the military for fifteen years. Wynn unequivocally identified
appellant in court as the robber. Wynn said that the store was well-lit and he was paying close
attention to the robber's eyes and face. He was 100% certain of the identification because it "seemed
like he was looking at him for eternity." Wynn said that the robber was a few inches taller and
heavier than he. When asked to identify appellant in a photo lineup, Wynn eliminated three pictures
right away; then used his hands to frame the part of the face that he saw and identified appellant.

 Two other employees testified. Thomas Bales, Giosio's stepson, testified that he did
not see the robber that well because he was focused on the gun and was not 100% sure either way. 
Jared Castro also said he could not identify the robber because he was looking at the gun, not the
robber's face. (4)


Discussion



 Appellant brings two issues on appeal: (1) the evidence is factually insufficient to
support the conviction (5); and (2) appellant received ineffective assistance of counsel. Although there
is no right to hybrid representation, see Scheanette v. State, 144 S.W.3d 503, 505 n.2 (Tex. Crim.
App. 2004), this Court granted leave for appellant to file a supplemental brief. See Green v. State,
137 S.W.3d 356, 365 (Tex. App.--Austin 2004, pet. ref'd) (appellant's pro se brief considered in
the interests of justice).


Factual Sufficiency


 To determine factual sufficiency, we view the evidence in a neutral light, not in the
light most favorable to the prosecution. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
The question to be answered is whether the jury was rationally justified in finding guilt beyond a
reasonable doubt. Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). The evidence
supporting the verdict, when considered by itself, may be too weak to support the finding of guilt
beyond a reasonable doubt. Id. In the alternative, there may be both evidence supporting the verdict
and evidence contrary to the verdict. Weighing all evidence, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been met. Id. at 484-85. In
other words, evidence of guilt can "preponderate" in favor of conviction but still be insufficient to
prove the elements of the crime beyond a reasonable doubt. Id. However, a factual sufficiency
review must be appropriately deferential to avoid substituting our judgment for that of the jury. 
Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Unless the available record clearly
indicates a different result is appropriate, an appellate court must defer to the jury's determination
concerning what weight to give to contradictory testimonial evidence because resolution often turns
on an evaluation of credibility and demeanor. Johnson, 23 S.W.3d at 8. We are not free to reweigh
the evidence, but must exercise our jurisdiction only to prevent a manifestly unjust result. Id.

 Appellant relies on Ward v. State to support his contention that the eyewitness's
testimony is insufficient. See 48 S.W.3d 383, 391 (Tex. App.--Waco 2001, pet. ref'd). Ward,
however, is distinguishable. In Ward, three eyewitnesses identified Ward as the robber: one with
a 3-second view, one with a 15-20 second view, and one on strong medication. Id. at 385-86.
Another witness identified a different person by name as the robber. Id. at 385. That witness had
gone to high school with both Ward and the man he saw running away, and called the police upon
news of Ward's arrest to tell them that they had the wrong person. Id. Ward's time card and four
eyewitness at his workplace put him at work during the robbery. Id. at 386-87. The majority opinion
found the evidence factually insufficient. (6) Id. at 391.

 We have no such countervailing evidence in this case. Instead, appellant challenged
the credibility of the eyewitnesses' identification and placed a heavy emphasis on the fact that two
witnesses at the scene did not identify him. However, neither did they identify anyone else or say
that appellant did not look like the robber--they were too focused on the gun to pay attention to the
robber. Although appellant attempted to cast doubt on the accuracy of the witnesses' identifications
with evidence that the witnesses used maneuvers to narrow their frame of reference when viewing
the photographic lineup, there is no claim that the arrays themselves were impermissibly suggestive
or tainted the in-court identification.

 Appellant also focuses on Giosio's "80% sure" answer as indicating that the
eyewitness identification was uncertain. Giosio's qualification of his identification, however, could
have rationally been interpreted by the jury as the caution of a person bending over backwards to
acknowledge that he had a small amount of doubt and was allowing for that doubt. Eyewitness
Wynn, who testified that he looked at the robber's face, not the gun, was completely certain in his
identification. The jury could have given his identification high credibility because of that testimony
that he focused on the robber's face. The testimony of a single eyewitness is sufficient to support
a felony conviction. See Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); Aguilar
v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); see also Johnson v. State, No. 01-03-00319-CR,
2004 Tex. App. LEXIS 5939, at *9 (Tex. App.--Houston [1st Dist.] July 1, 2004, pet. ref'd)
(designated for publication). We do not conclude that the State's proof of guilt was so obviously
weak as to undermine confidence in the jury's determination or that the finding of guilt was against
the great weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11. We overrule
appellant's first issue.


Ineffective Assistance


 In his second point of error, appellant contends that he received ineffective assistance
of counsel. Specifically, he contends that trial counsel should have sought and obtained an expert
witness on eyewitness identification and should have conducted an independent investigation of the
case.

 The Sixth Amendment to the United States Constitution guarantees the right to the
reasonably effective assistance of counsel in a state criminal proceeding. McMann v. Richardson,
397 U.S. 759, 771 n.14 (1970); Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To
show ineffective assistance of counsel, a convicted defendant must show that his trial counsel's
performance was deficient, in that counsel made such serious errors he was not functioning
effectively as counsel; and the deficient performance prejudiced the defense to such a degree that the
defendant was deprived of a fair trial. Strickland v. Washington, 466 U.S. 668, 687 (1984);
Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting Strickland). Prejudice is
demonstrated when the convicted defendant shows "a reasonable probability that but for counsel's
unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S.
at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. 
Banks v. State, 819 S.W.2d 676, 681 (Tex. App.--San Antonio 1991, pet. ref'd). Unless a defendant
makes both showings, it cannot be said that the conviction resulted from a breakdown in the
adversary process that renders the results unreliable. Strickland, 466 U.S. at 687; Oestrick v. State,
939 S.W.2d 232, 237 (Tex. App.--Austin 1997, pet. ref'd).

 Under Strickland, a defendant has the burden to prove a claim of ineffective
assistance of counsel by a preponderance of the evidence. McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App. 1996); Parmer v. State, 38 S.W.3d 661, 665 (Tex. App.--Austin pet. ref'd). 
Whether the Strickland test has been met is judged by the totality of the representation rather than
by isolated acts or omissions of trial counsel, and the test is applied at the time of the trial, not
through hindsight. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Banks, 819
S.W.2d at 681. Judicial review of a defendant's claim of ineffective assistance must be highly
deferential to trial counsel. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). There
is a strong presumption that counsel's conduct fell within the wide range of reasonable professional
assistance. Strickland, 466 U.S. 689; Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App.
1994).

 Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness. Thompson, 9 S.W.3d at 813;
Josey v. State, 97 S.W.3d 687, 696 (Tex. App.--Texarkana 2003, no pet.). In the absence of direct
evidence in the record of counsel's reasons for the challenged conduct, an appellate court will
assume a strategic motivation if any can be imagined. Garcia, 57 S.W.3d at 441. The challenged
conduct will not, under the circumstances, constitute deficient performance unless the conduct was
so outrageous that no competent attorney would have engaged in it. See Garcia, 57 S.W.3d at 441;
Thompson, 9 S.W.3d at 814.

 The court held a hearing on a motion for new trial. Trial counsel testified that the
State's attorney provided complete discovery. There were no plea offers made in this case. (7) Counsel
questioned appellant about the existence of an alibi; appellant had none, so there were no witnesses
he could interview to attempt to place appellant elsewhere. Appellant was not employed, so there
was no employer available for an alibi or to serve as a character witness. Trial counsel noted that
the witnesses' statements were detailed and consistent with each other. At trial, counsel vigorously
cross-examined the witnesses. He developed information about the method by which the photo
identifications were made and tried to cast doubt on the reliability of the identifications. He argued
to the jury that appellant was a significantly bigger man than the robber described by the witnesses. 
He had appellant stand up to demonstrate his size to the jury. Further, he did not object to the
introduction of a sample shotgun because he wanted to, and did, argue that having a shotgun pointed
at the witnesses would have so shocked and terrified them that their identifications would be
inaccurate because of that shock.

 Appellant argues that counsel failed to make an adequate independent investigation
of the case. However, the record fails to establish affirmatively any material evidence that was
missing from the case that might have affected the outcome. Appellant complains, for example, that
counsel failed to seek out other potential eyewitnesses. Yet the record fails to establish even the
possible existence of any "missing" witnesses, much less any whose testimony would benefit
appellant. Trial counsel focused on the witnesses who testified, who were mixed in whether they
could identify the robber. The jury chose to believe the unequivocal testimony of one
eyewitness--Wynn, the one with the shotgun to his chest--and the "80% sure" witness
identification. However, trial counsel raised significant questions concerning identity to the jury,
including a visual demonstration to illustrate that the witnesses described a man potentially smaller
than appellant.

 Appellant complains that an expert witness on the problems of eyewitness testimony
should have been called. However, the record from the motion for new trial shows that trial counsel
was never questioned about why he did not attempt to use such an expert. Accordingly, the record
cannot show that trial counsel's decision not to use an expert was not a strategic choice. Counsel
may have decided that reasonable doubt could be created through cross-examination. See Garcia,
57 S.W.3d at 441 (in absence of direct evidence in record of counsel's reasons for challenged
conduct, appellate court will assume strategic motivation if any can be imagined). Failure to request
the appointment of an expert witness is not ineffective assistance of counsel in the absence of
showing that the expert would have testified in a manner that benefitted defendant. See Cate v.
State, 124 S.W.3d 922, 927 (Tex. App.--Amarillo 2004, pet. ref'd); Parmer v. State, 38 S.W.3d 661,
668 (Tex. App.--Austin 2000, pet. ref'd).

 Further, appellant was represented by appointed counsel, creating an inference that
appellant would have had to ask the court for funds to pay an expert. Counsel may have concluded
there was a low possibility that the court would have paid for an expert. The State was not
presenting any expert testimony on identification that the defense would need to counter with its own
expert. See Deason v. State, 84 S.W.3d 793, 796-97 (Tex. App.--Houston [1st Dist.] 2002, pet.
ref'd) (whether State would use expert on significant fact issue a factor in whether court should
authorize payment for expert for defense). The Deason court noted that appellant was not restricted
in any way from presenting his defense of misidentification through cross-examination of the
eyewitnesses: "The jury was thus allowed to hear challenges to the identifications in a clear and
uncomplicated manner that did not require expert testimony to explain their significance further." 
Id. at 797. The court found no abuse of discretion in the trial court's refusal to appoint an expert
because the defendant was "allowed to present his defense of misidentification to the jury and that
an expert was not necessary to present or explain this defense." Id. The record in this case is
insufficient to discern whether counsel's failure to use an expert witness was the product of
reasonable trial strategy. See Josey, 97 S.W.3d at 696-97. Accordingly, we conclude that appellant's
failure to use such an expert was not an act of ineffectiveness. See Thompson, 9 S.W.3d at 813.

 Viewing the totality of the representation with the deference extended to trial counsel,
we cannot conclude that counsel's conduct fell outside the wide range of reasonable professional
assistance. See Strickland, 466 U.S. 689; Jackson, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Accordingly, we overrule appellant's second issue.


Supplemental Brief


 In his supplemental pro se brief, appellant complains that his counsel should raise all
non-frivolous claims that he, the client, urges. However, the issues he raises--false identification
and failure to investigate--were raised in the context of appellate counsel's ineffective assistance
issue. Appellant seems to misapprehend somewhat the nature of an appeal. The appeal is not a re-trial of the case at which evidence is developed; i.e., he complains that appellate counsel did not seek
out an expert on identification testimony. He offers no issues other than those raised and briefed by
counsel. We overrule the issues presented in appellant's supplemental brief.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: October 13, 2005

Do Not Publish
1. The record does not show any details concerning the investigation of the case and appellant's
arrest. No issues concerning these events was raised.
2. The driver that the robber resembled was out of state at the time of the robbery.
3. Appellant's photograph was not in the initial lineup.
4. The robber wore gloves; there were no fingerprints or other identifying evidence left at the
scene.
5. A challenge to factual sufficiency begins with the assumption that the evidence is legally
sufficient. Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).
6. The dissent noted that "[e]vidence with some element of untrustworthiness is customary grist
for the jury's mill." Ward v. State, 48 S.W.3d 383, 395 (Tex. App.--Waco 2004, pet. ref'd). The
dissent considered that the majority had improperly weighed the credibility of the witnesses "based
on factors that are not apparent in the record[,]" and would have held the evidence factually
sufficient. Id.
7. Appellant had other pending criminal matters in the same county but was represented by other
counsel for those matters.