TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN








NO. 03-03-00148-CR






Raymond Davis, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. 3021547, HONORABLE JON N. WISSER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 A jury found appellant Raymond Davis guilty of aggravated robbery with a deadly
weapon. Tex. Pen. Code Ann. § 1.07(a)(17) (West Supp. 2004), § 29.03(a)(2) (West 2003). The
court imposed a twenty-two-year prison term. On appeal, Davis challenges the legal and factual
sufficiency of the evidence to support the deadly-weapon element of the offense. He also contends
that the trial court erred in refusing to grant a hearing on the admissibility of a videotaped statement
he made to law enforcement and in overruling his motion to dismiss his court-appointed attorney. 
Finally, he argues that he received ineffective assistance of counsel. We will affirm the trial court's
judgment of conviction.


BACKGROUND


 Davis and Reginald Bedford approached Tanner Theile as he walked toward his car
after installing cable at a job site. Davis and Bedford asked Theile for a cigarette; Theile replied that
he had one in his car they could share. While Theile was getting into his car, Davis reached in and
grabbed the car keys from Theile's lap. Davis then allegedly told Bedford to "get out the knife." 
Bedford produced a long-blade buck knife, (1) and the two men demanded Theile's money. Theile
testified, "They said, 'I'll count to twenty. If you don't give me the money by then, I'll use this.' 
And just threats like that."

 Theile gave the two men his cash, which totaled twelve dollars. After the men took
his money, Theile asked if he could have some of the money back because he was nearly out of gas. 
Davis and Bedford returned two dollars and the car keys to Theile and quickly walked away. 

 While taking Theile's statement shortly after the robbery, Officer Flippin described
Theile as very upset and nervous, both his hands and body were shaking, and he was rapidly smoking
cigarettes. 

 After being apprehended, Davis gave a videotaped statement to the police, in which
he admitted to being at the crime scene with Bedford but denied playing a part in the robbery, saying
that he had tried to talk Bedford out of completing the crime. He also indicated that Bedford may
have held something in his hand, perhaps a screwdriver or a knife. Davis referred to "ten dollars"
several times during the interview, implying that it would not have been worth it to rob Theile for
such a small sum of money. Bedford pleaded guilty to the aggravated robbery and was convicted. 
In his interview with law enforcement, Bedford implicated Davis as a participant in the robbery and
as the wielder and owner of the knife. The two investigating police officers testified that a long-blade buck knife could, in the way it was used or intended to be used, cause serious bodily injury or
death. The knife was never introduced into evidence.


DISCUSSION


Deadly weapon

 A robbery becomes an aggravated robbery if the actor "uses or exhibits a deadly
weapon." Tex. Pen. Code Ann. § 29.03(a)(2). "Deadly weapon" is defined as


(A) a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or


(B) anything that in the manner of its use or intended use is capable of causing death
or serious bodily injury.



Id. § 1.07(a)(17). Only the second part of this definition is at issue here, as knives are not considered
deadly weapons per se. See McCain v. State, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000);
Brown v. State, 651 S.W.2d 782, 783 n.2 (Tex. Crim. App. 1983). The court of criminal appeals has
held that an object such as a knife can be a deadly weapon if the actor intends a use of the object in
which it would be capable of causing death or serious bodily injury. McCain, 22 S.W.3d at 503
(butcher knife visible from back pocket of appellant while he beat and robbed complainant could
support deadly-weapon finding, although appellant did not touch, brandish, or refer to knife during
robbery). 

 Davis seems to be contesting only whether the six-inch buck knife could be a deadly
weapon under the facts of this case, not whether he or his accomplice actually used or exhibited the
knife during the robbery. See id. Thus, we need consider only whether a six-inch buck knife could
be a deadly weapon under these facts.

 A deadly weapon is "anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury." Tex. Pen. Code Ann. § 29.03(a)(2) (emphasis added). 
The actor need not actually intend death or serious bodily injury but need only intend a use of the
object in which it would be capable of causing death or serious bodily injury. McCain, 22 S.W.3d
at 503. Thus, the statute covers conduct that merely threatens deadly force, even if the actor has no
intent of actually using deadly force. Id. (citing Tisdale v. State, 686 S.W.2d 110, 114-15 (Tex.
Crim. App. 1984)).

 When reviewing the legal sufficiency of the evidence, we look at all the evidence in
the light most favorable to the verdict to determine whether a rational finder of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The jury as trier of fact is
entitled to resolve any conflicts in the evidence, to evaluate the credibility of the witnesses, and to
determine the weight to be given any particular evidence. See Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996). Any inconsistencies in the evidence should be resolved in favor of the
verdict. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

 Davis urges that because neither the actual knife nor a replica were admitted into
evidence and because the police officers testified merely that "a" long-blade buck knife--not the one
used to commit the robbery--could cause serious bodily injury or death, the State failed to meet its
burden to prove that the knife used in this case was capable of causing serious bodily injury or death
and was thus a deadly weapon. See Johnston v. State, 115 S.W.3d 761, 763 (Tex. App.--Austin
2003, pet. granted) (citing McCain, 22 S.W.3d at 503) (affirmative deadly-weapon finding must be
based on specific facts of specific criminal episode). An alleged deadly weapon's capability of
causing death or serious bodily injury in the manner of its use or intended use must be evaluated in
light of the facts that actually existed when the felony was committed. Brown v. State, 716 S.W.2d
939, 946-47 (Tex. Crim. App. 1986); Johnston, 115 S.W.3d at 764.

 The State is not required to introduce the knife into evidence to meet its burden of
proof. Victor v. State, 874 S.W.2d 748, 751 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd) (citing
Morales v. State, 633 S.W.2d 866, 868 (Tex. Crim. App. 1982)). Nor is expert testimony required
to establish that a weapon is deadly. Davidson v. State, 602 S.W.2d 272, 273 (Tex. Crim. App.
1980). Also, the State need not show that any wounds were inflicted to prove that the knife was a
deadly weapon. Id.; Victor, 874 S.W.2d at 751. A knife may be a deadly weapon, depending on its
size, shape, and sharpness; the manner of its use or intended use; and its capacity to cause death or
serious bodily injury. Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). Factors such
as the manner of the knife's use, the size of the blade, the victim's description of the knife, express
and implied threats made by the accused, or the physical proximity of the accused and the victim
may be offered to establish a knife's capacity to cause serious bodily injury or death. See Brown,
716 S.W.2d at 946; Victor, 874 S.W.2d at 751. 

 The facts of this case are more like those in which a knife's deadly character has been
upheld than those in which such finding has been rejected. Compare Billey v. State, 895 S.W.2d 417
(Tex. App.--Amarillo 1995, pet. ref'd) (evidence about size of knife and its injurious capability,
appellant's proximity to appellant, and implied threat to use knife against complainant if she did not
comply was sufficient), and Petrick v. State, 832 S.W.2d 767 (Tex. App.--Houston [1st Dist.] 1992,
pet. ref'd) (appellant's advancement towards complainant while brandishing knife with five-inch
blade was sufficient), with In re J.A.W., 108 S.W.3d 573 (Tex. App.--Amarillo 2003, no pet.) (lack
of evidence regarding knife's size, shape, or sharpness and its capacity to produce death or serious
bodily injury; proximity between appellant and complainant; or threats pertaining to use of knife);
Victor, 874 S.W.2d 748 (lack of evidence describing size of pocket-knife's blade, appellant's
proximity to complainant, or verbal or physical threats). 

 Viewing the evidence in the light most favorable to a deadly-weapon finding, we
conclude that it is legally sufficient to support the verdict. Theile testified that the knife was a
"buck" knife (2) with a blade of six inches; two police officers testified that a knife of that type and size
could cause serious bodily injury or death; Davis and Bedford exhibited the knife prior to demanding
Theile's money and made explicit threats to "use" the knife if Theile did not comply; Davis had
already grabbed Theile's keys from his lap; Davis and Bedford were close enough to Theile to reach
inside the car window and take his keys; Davis and Bedford outnumbered Theile; and Theile was
visibly frightened by the episode. This evidence is sufficient for a rational fact-finder to find that
Davis and Bedford's intended use of the knife made it capable of causing death or serious bodily
injury. We overrule Davis's first point of error.

 In a factual-sufficiency review, the reviewing court "views all the evidence without
the prism of 'in the light most favorable to the prosecution,'" and sets aside the verdict only if it is
"so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." Clewis
v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In such a review, the court asks whether a
neutral review of all the evidence, both for and against the finding, demonstrates that the proof of
guilt is too weak or that the contrary evidence is too strong to rationally support a finding of guilt
beyond a reasonable doubt. Zuniga v. State, No. 539-02, 2004 Tex. Crim. App. LEXIS 668, at *20
(Tex. Crim. App. Apr. 21, 2004). In other words, was a jury rationally justified in finding guilt
beyond reasonable doubt? Id. Appellate courts are not free to reweigh the evidence and set aside
a jury verdict merely because the reviewing judges feel that a different result is more reasonable. 
Clewis, 922 S.W.2d at 135. A factual-sufficiency review must employ appropriate deference to the
fact-finder's role as the sole judge of the weight and credibility to be given to witness testimony. 
Johnson, 23 S.W.3d at 7. 

 As we have discussed, there was evidence concerning the knife's type and blade size,
the capability of such a knife to cause serious bodily injury or death, the proximity of Davis to
Theile, verbal threats to use the knife, and Theile's fright. Viewing all the evidence in a neutral light,
we conclude that the proof of Davis's intended use of a deadly weapon is not too weak to rationally
support a finding of guilt beyond a reasonable doubt. We overrule Davis's second point.


Evidentiary hearing

 In his third point, Davis contends that the trial court erred in refusing to grant a
hearing on the admissibility of his statement to law enforcement officers before admitting it into
evidence. The State responds that Davis never asked for a hearing on the matter. Our review of the
record indicates that the State is correct. Although Davis requested a pretrial hearing in an attempt
to avoid going to trial, he never indicated any concern about his statement to law enforcement from
which a court could reasonably infer that he was requesting a hearing on that matter. (3) Indeed, from
the context of the proceedings, Davis's references to a "pretrial" were best understood as attempts
to delay or avoid going to trial due to his dissatisfaction with his court-appointed attorney. Nowhere
in the record does Davis mention his appellate complaint about his statement--he doesn't contest
its voluntariness or the State's failure to give Miranda warnings. (4) See Tex. Code Crim. Proc. Ann.
art. 38.22, §§ 2, 6 (West 1979). Because Davis did not specifically alert the court to his concern
about his statement to law enforcement or request a hearing on the matter, he waived the right to a
hearing and has not preserved the issue for our review. (5) We overrule the third point of error.


Trial counsel

 In his fourth and fifth points of error, Davis contends that the trial court erred in
overruling his motion to dismiss his court-appointed attorney and that he received ineffective
assistance of counsel because of that attorney's representation. Davis urges that his trial attorney,
Malcolm Nettles, (6) entered into an agreement with the State, against his wishes, to exclude certain
portions of his statement made to law enforcement officers. Davis asserts on appeal that the
statement should have been excluded in its entirety because it was not voluntary and was not
preceded by a recitation of his Miranda rights. See Tex. Code Crim. Proc. Ann. art. 38.22; Miranda
v. Arizona, 384 U.S. 436, 475 (1966); Jackson v. Denno, 378 U.S. 368, 376-77 (1964); Moore v.
State, 505 S.W.2d 887, 889 (Tex. Crim. App. 1974). 

 A defendant must accept counsel assigned by the court unless he effectively waives
the right to counsel in favor of self-representation or can show adequate cause for the appointment
of another attorney. Reddic v. State, 976 S.W.2d 281, 283 (Tex. App.--Corpus Christi 1998, pet.
ref'd) (citing Thomas v. State, 550 S.W.2d 64, 68 (Tex. Crim. App. 1977)). A trial court has no duty
to search for an attorney agreeable to the defendant. Malcolm v. State, 628 S.W.2d 790, 791 (Tex.
Crim. App. 1982); Reddic, 976 S.W.2d at 283. Once the court has appointed an attorney to represent
a defendant, the defendant has been accorded the protections provided under the Sixth and
Fourteenth Amendments and article 26.04 of the Texas Code of Criminal Procedure regarding
counsel. See U.S. Const. amends. VI, XIV; Tex. Code Crim. Proc. Ann. art. 26.04 (West Supp.
2004); Malcolm, 628 S.W.2d at 791. If a defendant is displeased with his appointed counsel, he
must bring the matter to the court's attention and has the burden of proving that he is entitled to a
change of counsel. Malcolm, 628 S.W.2d at 791. 

 Davis's motion to dismiss merely alleged that Nettles "has failed to file the
appropriate and requested pre-trial motions necessary to the adequate and reasonable defense to the
charge pending against [me]" and that there was an antagonistic relationship between Davis and
Nettles. Davis's motion did not identify any particular motions that should have been filed. 
Although it is true that as of the date Davis filed this motion, Nettles had not yet filed a motion to
suppress the videotaped statement, Nettles did file such motion within the month. The court then
denied Davis's motion to dismiss Nettles about a month after the motion to suppress was filed. 
Davis makes no claim that any particular motions should have been filed that were not, nor has he
claimed that such motions had any reasonable probability of being granted or of impacting the
outcome of the trial. 

 Davis contends for the first time on appeal that Nettles entered into an unauthorized
agreement with the State to admit portions of his videotaped statement. However, Davis did not
bring this to the attention of the trial court either in his motion to dismiss Nettles or at trial when he
sought to have Nettles dismissed. Furthermore, he has not pointed to any harm that resulted from
the admission into evidence of portions of the statement, nor can we infer any. (7) Because Davis was
provided his Miranda warnings before being interviewed, there is nothing in the record to indicate
that the statement was not voluntary, and Davis has pointed us to no other reason why the statement
could properly have been suppressed. Davis bears the burden of making the court aware of his
dissatisfaction with counsel, stating the grounds for his dissatisfaction, and substantiating his claim. 
Hill v. State, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985). Davis has shown us no error in the trial
court's denial of his motion. (8) The court of criminal appeals has historically affirmed trial judges'
decisions in refusing defendants' motions to dismiss court-appointed attorneys. Malcolm, 628
S.W.2d at 791. We hold that Davis did not meet his burden of proving that he was entitled to a
change of counsel. We overrule his fourth point of error. A defendant is constitutionally entitled to reasonably effective assistance of counsel. 
Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); Stafford v. State, 813 S.W.2d 503, 506
(Tex. Crim. App. 1991). However, this constitutional right does not entitle a defendant to errorless
counsel or counsel whose competency is judged by hindsight. Garcia, 57 S.W.3d at 440. "The fact
that another attorney might have pursued a different course of action at trial will not support a
finding of ineffectiveness." Banks v. State, 819 S.W.2d 676, 681 (Tex. App.--San Antonio 1991,
pet. ref'd). 

 In assessing the effectiveness of counsel, Texas courts adhere to the test set forth by
the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). Under the Strickland test, the
defendant must first show that counsel's performance was deficient, i.e., that his assistance fell
below an objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999). Second, appellant must affirmatively prove prejudice by showing there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different. Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Id.; Blevins v. State, 18 S.W.3d 266, 271 (Tex.
App.--Austin 2000, no pet.). Failure to make both the required showing of deficient performance
and sufficient prejudice defeats the ineffectiveness claim. Strickland, 466 U.S. at 790; Thompson,
9 S.W.3d at 813. Under Strickland, a defendant has the burden to prove a claim of ineffective
assistance of counsel by a preponderance of the evidence. Thompson, 9 S.W.3d at 813; Parmer v.
State, 38 S.W.3d 661, 665 (Tex. App.--Austin 2000, pet. ref'd). 

 The assessment of whether a defendant received effective assistance of counsel must
be made according to the facts of each case. Lopez v. State, 96 S.W.3d 406, 417 (Tex. App.--Austin
2000, pet. ref'd). Whether the Strickland test has been met is to be judged by the "totality of the
representation," not by isolated acts or omissions of trial counsel, and the test is applied at the time
of the trial, not through hindsight. Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990);
Banks, 819 S.W.2d at 681. There is a strong presumption that counsel's conduct fell within the
range of reasonable professional assistance. Thompson, 9 S.W.3d at 813; Jackson v. State, 877
S.W.2d 768, 771 (Tex. Crim. App. 1994).

 Claims of ineffective assistance of trial counsel can be properly raised on appeal if
the appellate record is sufficiently developed. Robinson v. State, 16 S.W.3d 808, 813 n.7 (Tex.
Crim. App. 2000). In most cases the trial record alone will be insufficient. (9) See Thompson, 9
S.W.3d at 813. The record can be developed by a hearing on a motion for new trial. See Reyes v.
State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Davis did not move for a new trial alleging
ineffectiveness of counsel. The record is therefore silent as to trial counsel's strategies. When the
record is silent as to possible trial strategies, we will not speculate as to why counsel acted in a
particular way. See Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); Blevins, 18
S.W.3d at 271. If there is no evidentiary hearing on the issue of effectiveness, the defendant's
burden is difficult to meet, and rarely will we find counsel was ineffective. Blevins, 18 S.W.3d at
271-72 (quoting Thompson, 9 S.W.3d at 813).

 On this record, we conclude that trial counsel's representation of Davis was more than
adequate. Davis has not carried his burden of showing that his trial counsel's performance fell
outside the range of reasonable professional assistance, was not based on sound trial strategy, or
prejudiced his defense. See Blevins, 18 S.W.3d at 271. The alleged errors pertaining to Davis's
videotaped statement and counsel's agreement with the State to exclude certain portions of it, if
errors at all, were not so egregious as to undermine our confidence in the outcome of the trial. See
Thompson, 9 S.W.3d at 812-13. Davis's fifth point of error is overruled.


CONCLUSION


 For the foregoing reasons, we overrule Davis's points of error and affirm the trial
court's judgment. 



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: May 27, 2004

Do Not Publish

1. According to Theile's testimony, the knife's blade was about six inches long.
2. "Buck" knife is short for "buckhorn knife," which is a knife with a handle made from the
horn of a buck (male deer or antelope). This type of knife was formerly used in poker to mark the
next player to deal, hence the saying "pass the buck." See Webster's Third New International
Dictionary 288 (1986).
3. The court asked if Davis wanted to be heard, and he replied: "Sir, I wish not to go to jury
trial with Mr. Nettles [his court-appointed attorney]. I didn't ask for a jury trial. What else? Can
I have a pretrial first before a jury trial?" After the court informed Davis that his case had already
been through a pretrial setting and that he had two competent attorneys representing him, Nettles
explained to the court that at the pretrial he and the State had agreed that an out-of-court
identification would be suppressed and, since then, that certain portions of Davis's statement to law
enforcement would be limined out. Davis then stated, "The statement--because I--excuse me. My
statement was I got to see him. So I'm responsible for what the next man do? How is that?" The
trial court could not reasonably have construed this exchange to be a request for a hearing on whether
his statement to law enforcement was admissible.
4. At the beginning of the videotaped statement, the interrogating officers read Davis his
Miranda rights and asked if he understood them. Davis replied that he did and appeared to be
voluntarily participating in the interview.
5. See Tex. Code Crim. Proc. Ann. art. 38.22, § 6 (in cases where question is raised as to
voluntariness of statement of accused, trial court must make finding as to statement's voluntariness);
Tex. R. App. P. 33.1 (to preserve error for appellate review, party must have presented to trial court
timely request, objection, or motion stating specific complaint); Moore v. State, 505 S.W.2d 887,
889 (Tex. Crim. App. 1974) (specific objection about voluntariness of statement was sufficient to
require court to have hearing, despite defendant's failure to formally request hearing).
6. The trial court appointed an additional attorney for Davis on the day of his trial; Davis does
not allege any errors resulting from that attorney's representation.
7. We note that Nettles's trial strategy may have demanded such action, for instance if there
were no legal basis to attempt to suppress the entire statement, which appears to be the case.
8. Also, the record does not reflect any request by Davis for a hearing on his motion to
dismiss Nettles, other than his vague request for a "pretrial" without specifying the issue that
required the pretrial hearing. A trial court is not required sua sponte to hold a hearing on a
defendant's motion to dismiss court-appointed counsel. Malcolm v. State, 628 S.W.2d 790, 792
(Tex. Crim. App. 1982); see also Hill v. State, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985) (error
not preserved when defendant does not request hearing on motion to dismiss); Cain v. State, 976
S.W.2d 228, 236 (Tex. App.--San Antonio 1998, no pet.) (same). The record also indicates that
Davis's motion to dismiss had already been denied by another judge two weeks before the trial.
9. In cases where the record is undeveloped and cannot adequately reflect the motives of trial
counsel, a writ of habeas corpus is the more appropriate method of raising ineffective assistance of
counsel. Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); Robinson v. State, 16
S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000).